## BROSSART v. CORLETT.

1. **Easement: EXTENT OF: CONSTRUCTION.** While the rule is, that an easement appurtenant to an estate is so to every part thereof, whatever the subdivision at the time or subsequently; yet the servient estate is not to be burdened to a greater extent than was contemplated or intended at the time of the creation of the easement. And this intention is to be derived from the natural construction of the language used in the instrument, construed in the light of the surrounding circumstances.

2. —— **RIGHT OF WAY.** A right of way through certain premises reserved to the grantor of a portion of them cannot be enlarged as against the first grantee by a reference, contained in a subsequent deed of another portion, to the effect that the right extends to a certain point, which is in fact beyond that fixed in the reservation.

3. —— A right of way was reserved through the servient estate *to* a certain boundary line. *Held*, under the circumstances of the present case, that the way should not be extended *along* such line after reaching it. DILLON, Ch. J., dissenting.

Brossart v. Corlett.

*Appeal from Johnson District Court.*

FRIDAY, JUNE 18.

Lots 5 and 6, B, 80 in Iowa City, are like all other lots in that block, 80 feet front by 150 feet back, or in length. They front west, on Clinton street, lot 6 (the corner lot) being 80 feet on Clinton and 150 feet on the south, or on Washington street. There are eight lots in the block — a street on all sides — but there is no alley or other passage-way through said block. A plat of said block is here given, that this controversy may be the better understood.

In August, 1849, one Lyon was the owner of parts of said lots, of an irregular form, being 34 feet (of the rear

of lot 6) on Washington, running back on the east line 144 feet, and fronting on Clinton 86 feet 9 inches. In September of that year he sold and agreed to convey to one Van Fleet, the back portion of these lots, so far as owned by him, including the entire front on Washington (34 feet) and running 54 feet on his north line. The bond for a deed (dated September 3, 1849, and recorded December 23, 1849) after describing specifically by metes and bounds the premises sold, contains this language: " The said Lyon hereby reserving to himself, his heirs and assigns the right of way *to and fro through* said above described premises for wagons and foot passengers *from Washington street to the eastern boundary* of his premises situate on said lots 5 and 6, forever."

In April, 1850, Lyon made a deed in accordance with his bond, to said Van Fleet, containing the same words of reservation. Prior to this latter date, plaintiff owned a part of lot 5, to wit, 33 feet 3 inches on Clinton, 16 feet thereof extending the whole length of the lot or 150 feet, and 17 feet 3 inches (being south of the other) extending back only 23 feet 4 inches. On the 1st of December, 1849, Lyon conveyed to him 17 feet 3 inches by 72 feet 8 inches of said lot 5, being immediately in the rear of that which had a frontage of 17 feet 3 inches, and extended back 23 feet 4 inches. This tract extended to the west line of that sold to Van Fleet, and conveyed to him in April, 1850. This deed to plaintiff contained this provision : "And the said Brossart is hereby permitted to make use of the right of way to the east end of said lot, which right of way is reserved and described in the sale of the east end of lots 5 and 6, in B. 80, to John R. Van Fleet; when it is no inconveniency to said Lyon, and said Lyon is not and does not desire to make use of said right of way."

In 1854 Van Fleet conveyed to Gatling the premises obtained by him from Lyon, the deed containing this reservation: " The said Van Fleet, reserving the right of way through said lot for E. C. Lyon, his heirs and assigns, to Washington street from rear of property of said Lyon fronting on Clinton street."

In 1865 Gatling conveyed to defendant, excepting from the appurtenances, etc., " the right of way reserved by E. C. Lyon, from his lot fronting on Clinton street, as specified in his deed to Van Fleet, being from said Lyons' lot to Washington street. From the time Van Fleet purchased there has been a stable and shed covering all of his ground in lot 5, except a strip north and south on the west side of the shed and stable about 12 feet wide. This strip has been used part of the time for sheltering buggies, there being thereon a covered shed, closed however only at the north end. Part of the time it was occupied for the general purposes of a yard connected with the stable (livery), but not until the commencement of this suit was it used *as a way* by either party. Plaintiff had a fence on his south line to the shed or stable on defendant's ground, closing his premises and the way now claimed. This was erected as early as 1858 or 1859, and continued until cut down by plaintiff in the winter of 1866, '67, and after the commencement of this suit. The plaintiff always claimed the right of way in controversy, but never attempted to use it until about the time this suit was commenced, in 1867. This right was always denied by the defendant and his grantors.

Plaintiff had, until just before the commencement of this suit, a passage-way to Clinton street over his own premises, and another to the east over the premises of other parties. Both of these have been closed; that to Clinton street by his own act, and the only remaining way left for wagons is over defendant's premises.

There is an open way of about 12 feet, north from Wash-
ington street, running through defendant's premises about
60 feet, when it bears west to Lyons' property, being open
all the way to Lyon's east boundary, and is traveled daily
by defendant Lyon and his tenants. Plaintiff's claim is,
that this way and his right to it extends along defendant's
west line 12 feet wide, or of such width as to admit the
passage of footmen and wagons, until it strikes or reaches
his south line. This defendant denies, insisting that the
one traveled is the only one, and all there was reserved
or contemplated by the parties and the several convey-
ances.

All of the front on Clinton street held by Lyon after
his sale to plaintiff is covered by buildings owned by Lyon
and others, an area of some twenty feet remaining in the
rear of them, as well as plaintiff's building. The corner
of lot 6 on Clinton and Washington, extending to defend-
ant's west line, never belonged to Lyon, but is covered by
stores belonging to other parties. The object of this pro-
ceeding is to have recognized, opened and maintained the
way aforesaid from Washington street along defendant's
west line (12 feet wide) to plaintiff's south line. Upon a
full hearing, the court below found for defendant, and
plaintiff appeals.

*Fairall, Boal & Jackson*, for the appellant.

I. The division of the dominant estate did not destroy
the easement as to plaintiff's part of the lot.

It is well established that an easement appurtenant to
an estate is appurtenant to every part thereof, no matter
into how many parts it may be subdivided. Washb. on
Real Prop., vol. 2, p. 22; Washb. on Easements,
p. 49; *Underwood* v. *Carney*, 1 Cushing, 285; *Whitney*
v. *Lee*, 1 Allen, 198; *Watson* v. *Broen*, 1 Serg.

Serg. & Rawle, 227; *Garrison* v. *Rudd*, 19 Ill. 558; *Harris* v. *Drew*, 2 Barn and Adol. 164; *Tyringham's Case*, 4 Rep. 36; *Wild's Case*, 8 Rep. 156; *Lansing* v. *Wiswell*, 5 Denio, 23.

There is a limitation to the general rule above stated, to wit: that the servient estate shall not be burdened to a greater extent than was contemplated at the time of the creation of the easement, and the following are the authorities on which it is based: *Metropolitan Centen-nary Co.* v. *Eden*, 16 C. B. 42; *Allen* v. *Gomme*, 11 Adolph. and E. 759; *Henning* v. *Bennett*, 8 Exch. 157; *Bower* v. *Hill*, 2 Bing. (N. C.) 339; *Lewis* v. *Carstairs*, 6 Wheat. 193.

These cases are not analagous to the one under consideration. In the first one cited the principal point raised and settled was, that as the right of access to a lot over a way indicated upon a plan was indefinite, it might be used anywhere.

In *Allan* v. *Gomme*, the question was, whether the grant of a way was to a certain point for any purposes, or whether it limited to a certain use, or what was its limit.

In the consideration of sundry collateral points, which received the attention of the eminent judges in the cases above cited, the following illustrations were used: Says JERVIS, Ch. J., " I grant a way to a cottage which consists of one room. I know the extent of the liberty I grant, and my grant would not justify the grantee in claiming to use the way to gain access to a town he might build at the extremity of it." 16 C. B. 42.

The case put by DENMAN, Ch. J., was that of a way to a field of many acres, then in corn or pasture, reserved over a small parcel, granted for a man's yard; and if the grantor were to build a village on his field, it would not be claimed that the reservation of such a way could be extended to such use. 11 Adolph and E. 742.

These illustrations contemplate the using of the easements for purposes never intended by the parties creating them.

*Henning* v. *Bennett* was a case where a person having the right to enter a field at a particular point, attempted to enter at another place, and the court held that he must go through the old gate.

In *Bower* v. *Hill*, it was held that the use of an alley could not be extended to other lands than those to which the original parties who created it made it appendant.

"The distinction seems to depend upon whether the easement — a way for instance — is indefinite in its limitation, or, from the nature of the use to be made of it, is restricted and defined. Washb. on Eas. 183.

The way in controversy was not for the benefit of any particular part of the dominant estate. No house, or place, or purpose, is referred to in the deed, to which the easement was limited. There is no such restriction of its use as to confine it to any part of the premises. On the contrary, the fact that the two estates were in a business part of the city; that the greater one fronted on a main thoroughfare; that from the size more than one business house would probably be erected thereon, and such buildings would severally require a rear approach—all show the object had in view when the way was created, and that from the use to be made of it, it was not to be restricted to any one part, but was intended for the benefit of the entire principal estate. The few cases, in which the exception to the general rule is enunciated, and the illustrations used to show the reason of the exception, widely differ from the case under consideration.

II. The way was created by deed, and no length of time or mere non-use will operate to impair or defeat the right. Washb. on Eas. 551; *Doe* v. *Butler*, 3 Wend. 149–153.

There has been no adverse enjoyment of the lesser estate nor such obstructious as to take away the right. Adverse enjoyment, though only presumptive evidence of an extinguishment of the easement, is always subject to be rebutted, and that presumption is effectually met by showing that Brossart had had a more convenient access to his part of the servient estate in another way during the time of the cesser to use the way. Washb. on Eas. pp. 551, 556; and *Ward* v. *Ward*, 7 Exch. 838.

"An obstruction to its use cannot be said to be an adverse possession of an easement, since an easement is not capable of actual possession, apart from its enjoyment." These obstructions and interruptions must have been acquiesced in by Brossart before he can be affected by them. Washb. on Eas. 553, 554, and other authorities cited in the notes.

*Rush Clark and Wm. J. Haddock* for the appellee.

I. Does the easement, by the terms of the deed, extend beyond the nearest convenient point of approach to Lyon's remaining premises?

Has Lyon, *after reaching his own premises*, a right of way on the premises conveyed to Van Fleet and abutting his own land?

The deed will be construed in the light of surrounding circumstances. *Karmuller* v. *Krotz*, 18 Iowa, 352. The deed will be construed most strongly against Lyon. Brossart, who purchased after Van Fleet's purchase was recorded, can claim nothing beyond Lyon's right. A right of way to pass to Brossart to the extent claimed by him (if the reservation admits of this construction at all) must have been used to that extent by Lyon. Washb. on Easements, marg. p. 36. But the reservation is by its terms *to* the east boundary of Lyon's remaining premises, and not *along* such east boundary, *nor to the north boundary*.

If the reservation is indefinite it will be located so as to impose as little of a burden on the *servient* estate as consists with a fair use of the way; and it seems the right to locate the way is, in the first instance, in the owners of the servient estate. 2 Washb. on Real Property, marg. p. 50, and cases cited; BROWN, J., in *Bakeman* v. *Talbot*, 31 N. Y. 371.

The construction asked for by appellant involves the necessity of keeping open perpetually a way along the entire west side of defendant's premises, as in case of such way, Lyon must needs enter his own land at all points of his east boundary.

He must travel on *his own* land after reaching his own. This construction is consistent with the peculiar license to Brossart from Lyon.

A sale of part of the dominant estate shall not operate to extend the right originally intended, nor to increase the burden. Washb. on Easement, marg. p. 42; Washb. on Real Property, marg. p. 32.

II. The way as claimed by defendant to exist was located by usage by the parties occupying, and cannot be disturbed against the consent of the defendant. *Karmuller* v. *Krotz*, 18 Iowa, 352; *Barmon* v. *Angier*, 2 Allen and Mason, 128; *Garroty* v. *Duffy*, 7 R. I. 476; *Hull* v. *Fuller*, 4 Vt. 199 (cited in Washb. on Easements, marg. p. 41).

III. The supposed right to use a way along the entire west boundary of defendant is extinguished by adverse possession and user under a claim of right. *Burdick* v. *Heivly*, 23 Iowa, 511; *Smiles* v. *Hastings*, 24 Barb. 44; 29 N. Y. 540; Washb. on Real Property, marg. p. 551.

IV. Brossart had claimed the way and is estopped as to Corlett who purchased while so claimed. Washb. on Easements, marg. pp. 543, 548.

Brossart v. Corlett.

WRIGHT, J. — This case was decided right. The rule, we grant, is that an easement appurtenant to an estate is

1. EASEMENT: extent of; construction.

so to every part thereof, whatever the subdivision at the time or subsequently. But it is just as true that the servient estate is not to be burdened to a greater extent than was contemplated at the time of the creation of the easement.

Construing these title papers in the light of the surrounding circumstances, remembering that a subsequent sale of a part of the dominant estate shall not, and cannot, operate to extend the original right, nor to increase the burden upon the servient estate, and looking at the very language of the reservation, we have no difficulty in settling the rights of these parties. If we add to these considerations, their acts extending from eight to seventeen years (this action was not commenced until in 1869), the correctness of the judgment below is greatly strengthened.

Plaintiff took title with the knowledge of defendant's rights, or the rights of Van Fleet, under whom he holds.

2. —— right of way.

By his deed he is permitted to make use of the right of way as reserved and described in the conveyance from Lyon to Van Fleet. It is true that it speaks of a right of way to the *east end* of said lot (the lot conveyed to plaintiff), but as against defendant this is of no avail, unless the right reserved by Lyon extended so far. And any argument drawn from the claimed contemporaneous construction given by Lyon to his grant, and the extension of his reservation, by the language used in his deed to plaintiff, cannot avail against defendant or his grantors, for he was not a party to such deed. He holds adverse to and not under that conveyance. Not only so, but by his act and language he has always denied this construction. Now we must remember that when Lyon sold to Van Fleet he owned *all* of the ground (84 feet) along the west boundary of the tract conveyed,

extending to Clinton street in front. He thus had reserved, and as his own, a tract of 96 feet by 84, excepting the piece 23 feet 4 inches by 17 feet 3 inches in the N. W. corner, at that time held by plaintiff. He was about selling a parcel in the rear of this, which in the hands of another, without reservation, might be so occupied as to completely cut him off from any approach to that which he still held, from the rear or from Washington street. To prevent this was his object, and this is what the parties contemplated. The premises· to be reached were on lots 5 and 6. Not all of these lots, nor all of either. He owned parts of, but not equally in, each. Now he says: "I reserve a right of way *to and fro through* said premises (the servient estate) for wagons and foot passengers from Washington street *to* the *eastern boundary* of my premises." Not *to* and *along*, but *to* my premises. When, by going through said servient estate, the *eastern boundary* of the dominant estate was reached, the language, the meaning, the object of the parties was met and accomplished. More than this could not be claimed. If more was intended, it could have been made clear by the words " and along," in addition to those employed. The omission is most significant; for, if the way was to extend along defendant's whole western boundary, it is most singular that these words, so apt to express the intent, were not inserted. The language used is clear enough; that omitted makes it even more so.· But, if indefinite — that is, if the reservation was ambiguous — it would be located so as to impose as little burden upon the servient estate as consistent with a fair use of the way (with possibly the right to locate it, in the first instance at least, in the servient owner), and this again would sustain defendant's claim.

As already intimated, the argument that the language of plaintiff's deed from Lyon ("the right of way to the

east end of said lot ") is without meaning, unless his con-. struction is correct, is of no force, because defendant is no party to it and does not claim under it. But why is it not of use to him even though not extended as he now claims? The right reserved in the Van Fleet deed was to Lyon, *his heirs and assigns*, not to all persons. Plaintiff may have regarded the assignment or transfer of the right to him (locating the way as defendant does) as of vital importance, relying upon a right of way from necessity, from subsequent negotiation, if not from his deed, over and along Lyon's land. But, however this may be, the right conferred is limited, and is referred specifically to, and dependent upon that reserved in the deed, under which defendant claims and upon which he relies. And this, as we have seen, extends to Lyon's *east boundary*, and not to the *east end* of plaintiff's lot.

Affirmed.

DILLON, Ch. J. (dissenting). — Giving effect to *all* the language of the reservation in the deed from Lyon to Van Fleet, on which the whole case turns, and reading this language in the light of the surrounding circumstances, such as the situation and character of the dominant and servient estates, the location of the way, the objects for which it was reserved, the acts of the parties, etc., I am of opinion that the way in controversy was intended for the benefit of *all* the remaining premises of Lyon, and extended along the whole *eastern boundary* thereof.

The language of the reservation is as follows: " The said Lyon, reserving to himself, his heirs and assigns, the right of way to and fro, through said premises for wagons and foot passengers, from Washington street to the eastern boundary of his premises, situated on said lots 5 and 6, forever." No other construction than the one I adopt gives full effect, as I think, to all the language used. The right

reserved is "*through the premises*" (not through part of them)," to the eastern *boundary* of Lyon's premises," to the *boundary* (not to the southeast corner) "situated on said lots 5 and 6," and not lot 6 alone, as the opinion of the court holds. If the way was to end at the southeast corner of one of the lots, how easy and how natural it would have been to say so. When we consider that the estate retained by Lyon was business property, with frontage enough for four stores, shallow in depth, that there was no alley in the block, the necessity for a rear approach to the stores, the probable division and sale of the property, the unreasonableness of supposing that Lyon intended to benefit one portion thereof more than another, the fact that the burden on the servient estate is not onerous, since such a way does not take the valuable portion of it and is quite as advantageous to it as the dominant estate, the language of the other deeds in evidence, it seems to be the better construction — though I admit that the question is not free from some doubt — to hold that the way reserved was for the benefit of the *whole* of Lyon's premises, and extended along the whole of "the eastern boundary" line thereof, and did not terminate at the southeast corner of one of the lots. This is not a case of an indefinite location of a way, in which case I admit the correctness of the rule contended for by the defendant. It is simply a question as to the extent of the way, and this depends upon the meaning of the written reservation, to be determined from the language used, when it is applied to the subject-matter of the grant and the reservation. I content myself with this brief indication of the ground work of my dissent, without undertaking to state or enforce at length the arguments by which it might be supported. I concur very generally in the views presented in the printed argument of the appellant's counsel.                                    Affirmed.