NORA LOUGHMAN, appellee, v. LEO COUCHMAN et ux., appellants.

No. 47793.

(Reported in 47 N.W.2d 152)

886

April 4, 1951.

Rehearing Denied June 8, 1951.

. Stuart & Stuart, of Chariton, for appellants.

Harry F. Garrett, Thomas S. Bown and Elton A. Johnston, all of Corydon, for appellee.

GARFIELD, J.—In 1912 Loren Johnston who then owned the farm now owned by defendants sold a parcel thereof, 200 feet east and west by 160 feet north and south, to Fred Loughman, plaintiff's deceased husband. The farm abuts the Loughman tract on the north, west and south. On the east is a north-and-south highway between the farm and the village of Sewal. Loughman bought the ground as a site for a home which he built in 1912 on the south half thereof and occupied until his death in April 1948. Plaintiff continued to occupy the property as owner.

Sewage from the septic tank near the Loughman house has always been carried through a four-inch tile to a surface outlet in an open field on the adjoining farm about 570 feet from plaintiff's house. Loren Johnston orally consented to construction and use of the drain. In 1926 Johnston conveyed the farm. From 1930 to 1941 it was owned by the Equitable Life Insurance Company of Iowa from whom defendants Couchman and wife purchased in 1941.

Plaintiff sold the north half of her tract to one Miller in 1948 as a site for a home which he built that fall and winter. The deed to Miller, however, was not made until April 20, 1949. By arrangement with plaintiff, sewage from the septic tank near the Miller house was carried through an underground drain into the drain on the Loughman ground and to the open outlet on defendants' farm. Plaintiff's deed to Miller conveys "the permanent and continuous right to connect ·[with] a sewer outlet now on" plaintiff's property.

Defendant Couchman objected to outletting on his farm the added sewer water from the Miller house and in March 1949 stopped up the drain about 70 feet above its outlet. This caused sewer water to back into plaintiff's basement. Plaintiff then brought this suit to establish an easement in the drain and enjoin defendants from interference therewith. The obstruction in the drain was removed in April 1949, as we understand, pursuant to

a temporary writ of injunction. Trial in May 1950 resulted in a decree for plaintiff from which defendants have appealed.

Defendants concede plaintiff has the right to carry sewage from her house through the drain to the outlet on defendants' farm, but deny the right to use the drain for sewage from the Miller house. Plaintiff asserts the right to use the drain for sewage from the Miller house as well as from her own. The parties also differ as to the nature of plaintiff's right in the drain. Plaintiff contends it is an easement. Defendants maintain it is only a license. Although it may not be necessary to determine this question of easement or license in view of defendants' concession above referred to, it is extensively argued and we are not disposed to dodge it.

In general, an easement may be created in three ways: (1) express written grant, (2) prescription, and (3) implication. McKeon v. Brammer, 238 Iowa 1113, 1119, 29 N.W.2d 518, 522, 174 A. L. R. 1229, 1234; Restatement of Property, Servitudes, chapter 38, pages 2921 et seq.

It is conceded there was no written grant here so the first method may be eliminated. An easement by implication arises only where the use antedates the separation of title. That is, where the owner of an entire tract uses it so a part derives from the other a benefit or advantage of a continuous, permanent and apparent nature, and sells the part in favor of which such benefit or advantage exists, an easement, being necessary to the reasonable enjoyment of the property granted, will pass to the grantee by implication. See Marshall Ice Co. v. LaPlant, 136 Iowa 621, 629, 111 N.W. 1016, 12 L.R.A., N.S., 1073; Dyer v. Knowles, 227 Iowa 1038, 1043, 289 N.W. 911; McKeon v. Brammer, supra; 28 C.J.S., Easements, section 31; 17 Am. Jur., Easements, sections 33, 34; annotation 58 A.L.R. 824; Restatement of Property, Servitudes, sections 474–476.

An easement did not arise by implication here since the drain was not constructed or used by Johnston before he sold the tract to plaintiff's deceased husband. If Johnston had built and used the house and drain, then sold to Loughman, an easement might have arisen by implication. That the deed from Johnston to Loughman for some unexplained reason was not made until June

25, 1915, is unimportant. It clearly appears Loughman purchased the ground from Johnston before the sewer or house was built in 1912.

■ Defendants argue no easement arose by prescription because the drain was constructed with Johnston's consent and permissive use cannot ripen into an easement. Loughmans' use of the sewer was not merely permissive in the sense that it might be prohibited at pleasure. It was of right. We have frequently held under analogous circumstances there may be an easement by prescription where the original use was with consent of the servient owner and use as of right has continued for more than ten years. McKeon v. Brammer, supra, 238 Iowa 1113, 1119, 29 N.W.2d 518, 521, 174 A.L.R. 1229, 1233; Morse v. Rhinehart, 195 Iowa 419, 192 N.W. 142; Pascal v. Hynes, 170 Iowa 121, 125, 152 N.W. 26, 27; Hatton v. Cale, 152 Iowa 485, 132 N.W. 1101.

■ If it were true that Loughmans' use of the drain was merely permissive while Johnston owned the farm, such permissive use became adverse upon his transfer of the farm in 1926. 28 C.J.S., Easements, section 14d(2), page 656. See also 17 Am. Jur., Easements, section 67. There is no evidence that any owner of the farm informed Loughman he might continue to use the drain as a mere favor nor of any prohibition of its use before Couchman obstructed the drain in 1949.

■ During the intervening twenty-three years the Loughmans used the drain as of right and until Mr. Loughman died in 1948 he went on the farm about every three months to keep the outlet in condition. There was a clear assertion of the right to use the drain and notice thereof to the owners of the farm. In all, the Loughmans used the drain as of right and maintained its outlet for some thirty-six years after having purchased the ground from Johnston and constructed the drain and their home, doubtless in reliance upon their right to use the drain. We think such right amounts to an easement by prescription.

■■ However, we believe plaintiff's easement is not of such extent as entitles her or Miller to discharge sewage from the Miller house as well as from plaintiff's into the drain that outlets on defendants' farm.

There is a scarcity of decisions bearing on this point, at least

as to an easement of the kind here involved. It is the general rule where there is an easement of way appurtenant to a tenement that a subsequent owner of part of the tenement has the right to use the way as appurtenant to his part of the land. Annotations 8 A.L.R. 1368, 34 A.L.R. 972. Not many decisions relating to ways consider the question whether use by a subsequent owner of part of the dominant estate increases the burden upon the servient estate.

Brossart v. Corlett, 27 Iowa 288, 297, has to do with an easement in a way created by express grant. The claim to an extension of the easement was denied. The opinion states: "* * * an easement appurtenant to an estate is so to every part thereof, whatever the subdivision at the time or subsequently. But it is just as true that the servient estate is not to be burdened to a greater extent than was contemplated at the time of the creation of the easement."

This language from Brossart v. Corlett is quoted with approval as recently as in Barbaresos v. Casaszar, 325 Mich. 1, 8, 37 N.W.2d 689, 693. The decision in the Michigan case is not favorable to plaintiff here.

Another early case cited by plaintiff, Henrie v. Johnson, 28 W. Va. 190, 192, says:

"The law seems to be well-settled, that where land is granted with a right of way over other lands, the right is appurtenant to every part of land so granted, and the grantee of any part, no matter how small, is entitled to it, provided no additional burden is thereby created upon the servient estate."

Precedents dealing with rights of subsequent owners of parts of the dominant land to use a way appurtenant thereto are not entirely applicable here. It might well be that if the added use by Miller and his family of a way over defendants' farm were here involved such use would not unduly burden the farm. The fact remains, however, that even decisions dealing with easements in ways recognize that added user may not unduly increase the burden upon the servient estate.

28 C.J.S., Easements, section 89, states: "The use of easements by prescription is limited * * * as to * * * extent, to the

use by which the right was established." 17 Am. Jur., Easements, section 100, says: "Moreover, a prescriptive right acquired by a particular user cannot justify a materially larger user which has not been enjoyed for the full prescriptive period."

Restatement of Property, Servitudes, section 477, states, "The extent of an easement created by prescription is fixed by the use through which it was created." Comment b under section 477 includes this: "No use can be justified under a prescriptive easement unless it can fairly be regarded as within the range of the privileges asserted by the adverse user and acquiesced in by the owner of the servient tenement."

Sections 478–480 of the Restatement and some of the comments thereunder deal with the question of unreasonable increase in burden upon the servient estate. Comment d, page 2997, under section 478, says, in part:

"An increase in the burden on the servient tenement beyond that caused by the adverse use by which an easement was created is an undue increase if it is such an increase as, it may reasonably be assumed, would have provoked an interruption in the adverse use had the increase occurred during the prescriptive period. It is an increase such that its tolerance is not implicit in the tolerance of the adverse use by which the easement was created."

A statement similar to that just quoted appears in Comment c, page 3003, under section 479 .of the Restatement which considers the extent of easements appurtenant as affected by evolution of the dominant tenement. Comment b, section 479, explains that uses satisfying new needs are permissible "if the condition requiring them is a normal development of the condition the needs of which were served by the adverse use which created the easement. A normal development is one which accords with common experience. It is, therefore, one which might reasonably have been foretold."

So much for the authorities. After all, our question is mainly whether added use of the sewer by Miller causes an undue or unreasonable increase in burden upon defendants' farm.

There is no evidence Loren Johnston ever consented to or contemplated such an additional use of the sewer. It appears

Johnston and Mr. Loughman were close friends. A son of the deceased Johnston, a witness for plaintiff, testifies:

"My father told me he was giving Loughman permission to dig a sewer drain from his house down across and empty on his land. * * * He didn't want to sell any lots off. * * * He never said anything about letting anyone else put a sewer down there. There was no agreement I ever heard about that anybody else could put a sewer in there."

There is some indication plaintiff herself was doubtful at best as to this claimed right of added user. At least she made some attempt to conceal from defendant Couchman the fact that sewage from the Miller house was carried into the drain on her property. Plaintiff admits she told Couchman twice she did not know whether the Miller sewer was connected with hers when she in fact had such knowledge and gave Miller permission to make the connection.

So far as shown plaintiff and her husband had no children and lived alone in their house until the latter's death in 1948. Three people live in the Miller home. It is fair to conclude as much or more sewage comes from that home as from plaintiff's.

Couchman's testimony, and it is not denied, is that conditions at the sewer outlet were not objectionable and use of the sewer caused no damage until after this added user. Since then "quite a lot" of water from the sewer has stood near the outlet and at times seeps into the hog lot and cow pasture. It gives off an offensive odor in warm, sultry weather. Couchman has kept his milch cows out of the pasture where the outlet is because of the condition there. He attributes loss of about fifty chickens to their drinking out of the hole near the outlet, although this seems to be at least somewhat conjecture on his part.

A witness for plaintiff who built Mr. Miller's sewer testifies, in substance, the outlet could be fixed so only a very small amount of water would stand near it. He says the water near the outlet could not get away because dirt has accumulated there. It was conceded that if another witness were present he would qualify as an expert and testify that with a small amount of money and time the sewer could be opened so as not to make a pool at the outlet or injure the farm any more than it has for years.

Plaintiff strongly relies on the fact her house, with Johnston's knowledge, was built on the south half of the tract purchased from him. It is argued from this the parties must have contemplated that another dwelling would be built on the north half of the tract from which sewage would be carried into this drain. We think too much is claimed for the location of plaintiff's house and Johnston's knowledge thereof. The argument rests largely on conjecture. It is hardly reasonable to conclude from such slight evidential basis that Johnston and Loughman contemplated an event which did not in fact occur for thirty-six years, after both were dead. It seems as reasonable to infer, as defendants suggest, that plaintiff's home was built on the south half of the tract in order to leave space for a garden on the north. Then too, the south half of the tract is closest to the outlet of the drain and placing the dwelling there made the drain shorter and less expensive.

Plaintiff testifies only that "we always had hopes somebody would build on the next lot. Q. You contemplated that at all times? A. Yes." Obviously plaintiff could not speak for Johnston nor does she undertake to do so. Although pressed for an answer to whether the sewer was built so it would be adequate for two houses plaintiff was unable to answer.

Plaintiff is entitled to a decree establishing an easement in the drain appurtenant to the property owned by her but not to the property owned by Miller and to an injunction against obstruction of the drain provided no attempt is made to use it for sewage from the Miller property. For the entry of such a decree the cause is—Reversed and remanded.

All JUSTICES concur except MANTZ, J., not sitting.