LULU L. WILBUR, appellant, v. CITY OF COUNCIL BLUFFS et al., appellees.

No. 48831.

(Reported in 73 N.W.2d 112)

NOVEMBER 15, 1955.

J. A. Williams, of Council Bluffs, for appellant.

David E. Stuart, City Attorney, and Peterson, Smith, Peterson, Beckman & Willson, all of Council Bluffs, for appellees.

HAYS, J.—Plaintiff seeks to quiet title to Lots 11, 12 and 13, Block 41, Ferry Addition to the City of Council Bluffs, Iowa. Defendant by cross-petition asks that it be decreed the owner of an easement across said lots for railroad and spur track right of way 15½ feet in width. Title was quieted in plaintiff subject to an implied easement in the defendant. Plaintiff has appealed.

The three lots are located on the South Half of Block 41. Block 41 is bounded on the north by West Broadway, on the east by Thirty-seventh Street, and on the south by First Avenue, on which is located the main line of the Chicago and Northwestern Railroad Company. To the east of Thirty-seventh Street are Blocks 23 and 32 of the same addition.

Prior to 1911 a private concern owned and operated a water works on Blocks 23 and 32, which furnished water for the City. In 1911, under condemnation proceedings, the City acquired title to Blocks 23 and 32 together with the plant which it continued to operate thereon and also title to Lots 13 and 24. In 1912 it purchased Lot 12 and in 1916, Lot 11. It also acquired Lots 14, 15, 27, and 26 by condemnation proceedings. It is stipulated that the City acquired a fee title to the above designated Blocks and Lots.

Thereafter, the City paid the railroad company to construct a spur track from the main line on First Avenue to the plant on Blocks 23 and 32. This track runs from First Avenue northeast across Lots 11, 12, 13, 14, 15, 27, 26, 24; then across Thirty-seventh Street to the plant. At least since 1920, this spur track was used to haul coal to the plant and was so used in 1942, 1943, 1944, and 1945. Following World War II the City converted the plant from coal to gas and materially reduced the use of the spur track. In 1951 a new plant was erected in another part of the City and use of the track ceased. The right of way was allowed to grow up with weeds and was covered with several inches of crushed rock where it crossed Thirty-seventh Street. In 1953

the City sold Blocks 23 and 32 together with the right of way over said Lots. We are here concerned only as to Lots 11, 12 and 13.

In 1942, by special warranty deed without reservations, the City sold Lots 11, 12 and 13 to one Donald Dawson, who, in the same year, sold them to William Wilbur, giving a warranty deed. By warranty deed William Wilbur transferred them to Lulu Wilbur, the plaintiff herein, who now owns them. Directly north of these Lots is an alleyway, not opened, and immediately north thereof are Lots 30, 29, and 28. These Lots have been owned since 1934 by Lulu Wilbur, on which she operates a tourist camp.

The record is silent as to what knowledge Donald Dawson or William Wilbur may have had as to the existence of this spur track across Lots 11, 12 and 13. It does appear, however, that both prior and subsequent to 1942, when the City conveyed the Lots, this spur was maintained and used as an adjunct to the water works on Blocks 23 and 32. The record is that in 1942 there were nine cars of coal delivered over this spur track; and about the same number in 1943, 1944 and 1945, with no objections being made by the then owners. Upon converting to gas, the use dropped to three cars per year. The plaintiff, as a defense witness, states: "In the ten years that I lived there and operated this tourist camp there and prior to the time I received the deed from my husband (1944), I never saw railroad cars roll over these tracks because I seldom went down there. I knew of the existence of the tracks but I thought it was abandoned." A fair view of the record casts at least a similar knowledge upon Dawson and William Wilbur.

Plaintiff asserts absolute title based upon the conveyance by the City to Dawson. The City asserts ownership on the theory of an implied easement. No issue of an abandonment is involved, as in appellant's reply brief it is said: "Obviously there was no occasion for plaintiff's pleading or attempting to prove an abandonment of that which it asserts never existed." Neither are we called upon to, nor do we, decide the extent of use existing; if, in fact, an easement exists.

That there may be created an easement by implication is well recognized by the authorities. 17 Am. Jur., Ease-

ments, section 128; 28 C. J. S., Easements, section 30; Restatement of the Law of Property, Servitudes, section 474. It is recognized by this court. Morrison v. Marquardt, 24 Iowa 35, 92 Am. Dec. 444; Dyer v. Knowles, 227 Iowa 1038, 289 N.W. 911; McKeon v. Brammer, 238 Iowa 1113, 29 N.W.2d 518, 174 A. L. R. 1229; Loughman v. Couchman, 242 Iowa 885, 47 N.W.2d 152. In Dyer v. Knowles, supra, we said that where real estate has been owned as a unit, one part may be burdened with a use entirely for the benefit of another part and when sold one part may be burdened or benefited by an implied easement, if apparent or reasonably necessary; but such must be clearly within the intention of the parties. In McKeon v. Brammer, supra, we stated at page 1119 of 238 Iowa, page 522 of 29 N.W.2d: "As a general rule an implied easement is restricted to the servitude that exists when the owner of two parcels employs one so as to create a servitude on the other and later transfers one parcel without specific grant or reservation of the easement in the conveyance."

Restatement of the Law of Property, Servitudes, section 476 (Comment) states: "An easement created by implication arises as an inference of the intention of the parties to a conveyance of land. The inference is drawn from the circumstances under which the conveyance was made rather than from the language of the conveyance." Various factors bearing upon this inference of intention are: Prior use; extent of knowledge of prior use by the parties; extent of necessity of the easement; and consideration paid.

This record clearly shows that at and prior to the time of sale by the City this spur track was maintained and used by the City. It was clearly visible to all who might care to see it. While the plant was accessible from West Broadway and Thirty-seventh Street, no other way for railway haulage existed. It is clearly apparent that such a means of transportation was reasonably necessary to the use for which Blocks 23 and 32 were being subjected. Subsequent to the sale, this spur was used in the same manner as before without objection. The consideration paid the City was $25 per lot; and there is testimony, undisputed, that as of the date of sale, 1942, that was a fair value if subject to an

easement. If no easement existed, a fair value would be $100 to $150 per lot. It appears the spur originally cost the City about $2000. The purchaser from the City of Blocks 23 and 32 has withheld $2500 of the purchase price pending determination of the existence of an easement.

In Restatement of the Law of Property, Servitudes, section 476 (Comment) page 2978, it is said: "The inference drawn represents an attempt to ascribe an intention to parties who had not thought or had not bothered to put the intention into words, or perhaps more often, to parties who actually had formed no intention conscious to themselves. In the latter aspect, the implication approaches in fact, if not in theory, crediting the parties with an intention which they did not have, but which they probably would have had, had they actually foreseen what they might have foreseen from information available at the time of the conveyance. * * * [page 2988] Also they will be assumed to know and to contemplate the continuance of reasonably necessary uses which have so altered the premises as to make them apparent upon reasonably prudent investigation."

Under this record there can be little doubt but that at the time of the sale all parties knew of this right of way. That the City considered it entitled to the continued use of this track is evidenced by its subsequent use; and that the grantees had no feeling of infringement upon their property is evident by the absence of objection thereto.

It is clearly a case where an easement by implication should be held to exist. The finding of the trial court to such effect is correct and the decree should be and is affirmed.—Affirmed.

OLIVER, C. J., and GARFIELD, BLISS, WENNERSTRUM, SMITH, THOMPSON, and LARSON, JJ., concur.

PETERSON, J., takes no part.