Dewey WYMER and Darline Wymer,
Appellants,

v.

Lee DAGNILLO and Maxine Dagnillo,
Appellees.

No. 53184.

Supreme Court of Iowa.

Nov. 12, 1968.

Lorna Lawhead Williams, Des Moines, for appellants.

Tesdell, Miller & Rydell, and Patterson, Lorentzen, Duffield, Timmons, Wright & Irish, Des Moines, for appellees.

MOORE, Justice.

Plaintiffs, Mr. and Mrs. Dewey Wymer, own the south 100 feet of lots 138 and 139 of Grandview Acres in Des Moines. Their property, purchased November 4, 1961, constitutes the southern 100 feet of a 200 foot tract formerly owned by their grantor, Chester Van Gundy, Jr.

Defendants, Mr. and Mrs. Lee Dagnillo, own the north 100 feet of the above mentioned 200 foot tract. Their immediate grantor, by deed dated September 13, 1963, however, was Hemminger Homes, Inc., as said company had purchased the north 100 foot lot from Van Gundy in February 1963 and built a house thereon.

Soon after acquiring the south 100 foot lot in 1960 Van Gundy built an addition to the existing house thereon in the form of a double garage. The four foot eaves of this addition extended about two feet over the above described north 100 foot tract. Van Gundy acquired the north 100 foot tract by deed dated May 31, 1961.

The parties to this lawsuit were unaware of the exact location of the lot line between their tracts until September 1965 when defendants had their property surveyed. They then discovered their lot line was about two feet under the eaves of plaintiffs' garage and because of the angle at which the garage was constructed the roof projected a few more inches over the lot line at the northeast corner than at the northwest corner of the garage.

Defendants had decided to fence in their yard to attain additional privacy for their

young daughter and three dogs which they owned. After contracting to purchase a 42 inch chain link fence from Montgomery Ward they were advised by that company's representative to have the survey made.

The relative harmony which had prevailed between the parties ceased when Mr. Dagnillo visited the Wymer home and advised Mrs. Wymer of the results of the survey and the plan to install the fence. Mr. Dagnillo testified when he made this visit he offered to sell the land under the eaves for forty-five dollars per foot. Mrs. Wymer testified Dagnillo asked one thousand dollars per foot. Whatever the fact may be in this regard it is undisputed Dagnillo was angrily ordered to leave the premises by Chris Widmer, a rather large young man who was then in the Wymer home.

The following day, at the request of Mrs. Wymer, Widmer went next door to the Dagnillo home in an attempt to dissuade Dagnillo from installing the fence. The result was an altercation between Widner and Dagnillo.

After this unhappy incident defendants had a second survey run to verify the accuracy of the first. The findings of this later survey confirmed those of the first. Defendants then directed Montgomery Ward to proceed with the installation of the 42 inch high chain link fence. It was installed three inches inside defendant's south lot line. The completed fence now runs below the eaves of plaintiffs' garage about 29 inches from the edge of the building.

Plaintiffs brought action in equity seeking confirmation of an easement by implication to a seven foot strip of land adjacent to the garage, declaration that the fence was a nuisance and abatement thereof, damages, costs and such other relief as the court deemed appropriate.

Prior to commencement of this lawsuit defendants offered plaintiffs an easement which was renewed in their answer to plaintiffs' petition as follows: "That it would be reasonable to permit plaintiffs to have an easement over the south three or four feet of defendants' land (where the same abuts the area of plaintiffs' garage) to enable plaintiffs to more easily maintain or repair their garage overhang; that defendants have tendered such an easement to plaintiffs through plaintiffs' attorney on two or three occasions, including prior to the filing of this lawsuit, and again tender such an easement into this Court, so long as it is limited reasonably to the vital needs of plaintiffs and not extended to their desires for additional driveway and ground."

The trial court awarded plaintiffs and their successors in interest an easement to the extent of the overhang existing on the north end of plaintiffs' garage with a reasonable right to enter upon defendants' land to paint, service and maintain said overhang. The claim of nuisance was dismissed and costs assessed against plaintiffs.

On this appeal plaintiffs assert the trial court erred in not declaring an implied easement to the adjacent seven foot strip, not declaring the fence constituted a nuisance and assessing costs to them. We disagree and hold the judgment and decree of the trial court must be affirmed.

I. Our review in this equity case is de novo. Rule 334, Rules of Civil Procedure. We give weight to the fact findings of the trial court but are not bound by them. Rule 344(f), par. 7.

■ II. In general, an easement may be created in three ways: (1) express written grant, (2) prescription and (3) implication. McKeon v. Brammer, 238 Iowa 1113, 1119, 29 N.W.2d 518, 522, 174 A.L.R. 1229, 1234; Loughman v. Couchman, 242 Iowa 885, 888, 47 N.W.2d 152, 153; Farmers & Merchants Sav. Bank v. Campbell, 258 Iowa 1238, 1248, 141 N.W.2d 917, 923. No express written grant is claimed here. No easement arose by prescription because

the claimed use did not persist with notice for the statutory period.

Plaintiffs claim an easement by implication, an appurtenant easement. "An appurtenant easement is an incorporeal right which is attached to, and belongs with, some greater or superior right—something annexed to another thing more worthy and which passes as an incident to it. It is incapable of existence separate and apart from the particular land to which it is annexed." 25 Am.Jur.2d, Easements and Licenses, section 11, page 425. We express these general principles in Kane v. Templin, 158 Iowa 24, 27, 28, 138 N.W. 901, 902 and citations, and McKeon v. Brammer, 238 Iowa 1113, 1125, 1126, 29 N.W.2d 518, 525, 174 A.L.R. 1229, 1238.

■ Such an easement by implication arises only where the use antedates the separation of title. That is where the owner of an entire tract uses it so a part derives from the other a benefit or advantage of a continuous, permanent and apparent nature, and sells the part in favor of which such benefit or advantage exists, an easement, being necessary to the reasonable enjoyment of the property granted, will pass to the grantee by implication. Marshall Ice Co. v. LaPlant, 136 Iowa 621, 629, 111 N.W. 1016, 1019, 12 L.R.A.,N.S., 1073; McKeon v. Brammer, supra; Loughman v. Couchman, 242 Iowa 885, 888, 47 N.W.2d 152, 154; Farmers & Mechanics Sav. Bank v. Campbell, 258 Iowa 1238, 1249, 141 N.W.2d 917, 923; 28 C.J. S. Easements § 31.

■ An easement by implication upon severance of the unity of ownership in an estate arises when these factors appear: 1, a separation of the title; 2, a showing that, before the separation took place, the use giving rise to the easement was so long continued and obvious that it was manifest it was intended to be permanent; and 3, it must appear that the easement is continuous rather than temporary, and that it is essential to the beneficial enjoyment of the

land granted or retained. Bray v. Hardy, 248 Iowa 794, 797, 82 N.W.2d 671, 673; Farmers & Mechanics Sav. Bank v. Campbell, supra, 258 Iowa 1238, 1249, 141 N.W. 2d 917, 923, 924.

In Wilbur v. City of Council Bluffs, 247 Iowa 268, 271, 73 N.W.2d 112, 113, we quote this from Restatement, Property, section 476: " 'An easement created by implication arises as an inference of the intention of the parties to a conveyance of land. The inference is drawn from the circumstances under which the conveyance was made rather than from the language of the conveyance.' Various factors bearing upon this inference of intention are: Prior use; extent of knowledge of prior use by the parties; extent of necessity of the easement; and consideration paid."

■ Obviously each case where an easement by implication is claimed must depend upon its particular facts. We therefore return to the record before us. Van Gundy built the addition to his house and used it for several months before acquiring the north 100 foot lot. Before and after that he cut the grass and weeds north of his garage over a strip of seven or more feet. He also at times parked his automobile in this area. A culvert in the street extended not only the length of the Van Gundy driveway but also a few feet further north. This he used as a convenience in entering his driveway from the north.

After taking a deed to the south 100 foot lot from Van Gundy plaintiffs used the land north of the garage as Van Gundy had done. Their children played there and continued until the survey was made at defendants' instance. In installing the fence along the south line of defendants' property it was necessary to remove some shrubs and flowers which plaintiffs had planted north of their lot line.

The trial court's findings and conclusions include: "That the plaintiffs have failed to establish that they have any rights whatever in the south seven feet of

the defendants' property as alleged in Division I of their petition. * * *

"That under the most favorable interpretation of the law the plaintiffs are not entitled to any more than the easement and the right of access tendered by the defendants prior to the lawsuit, and tendered by their pleadings in this case, and as testified to by them in the trial of this lawsuit."

Our review of the record leads us to the same conclusions. Use of the seven foot strip north of the lot line was not that required by the above stated rule. The trial court established an easement only as essential to the beneficial enjoyment of the property deeded to plaintiffs by Van Gundy.

■ The parties stipulated the Des Moines Zoning Ordinance provides a residence must be built with a seven foot side yard. Plaintiffs, without citing any authority for the proposition, contend they therefore have such an easement north of their garage.

As we understand the record the house was properly located under the zoning ordinance until Van Gundy built the garage addition thereto. A contention he could do so and thereby establish an easement on the north 100 foot lot is without merit. Defendants were not parties to the zoning ordinance violation or contractual parties with Van Gundy.

III. Plaintiffs assert the trial court erred in finding "That the fence that the defendants erected was a legal fence and was not a nuisance."

L. M. Jackson, Montgomery Ward's employee, testified: "The fence is our No. 3437, supreme quality, eleven-gauge chain link. It is a common fence and termed as the best seller. More of it is sold than any number we have. I have been selling fence for 25 years in the City of Des Moines. * * * I have installed a couple thousand fences of this type in Des Moines and vicinity in the past five years, 42 inch-

es high with prongs at the top. * * * I would estimate they are about an inch and a half or two inches long and they are twisted together. The points are cut at the factory, standard in the industry, and they are sharp. When I said there are about 2000 fences in Des Moines in the last five years of this type I am referring to those with sharp points of ours and many thousands of other people." His testimony is undisputed in the record.

Section 657.1, Code, 1966, provides: "Nuisance—what constitutes—action to abate. Whatever is injurious to health, indecent, or offensive to the senses, or an obstruction to the free use of property, so as essentially to interfere with the comfortable enjoyment of life or property, is a nuisance, and a civil action by ordinary proceedings may be brought to enjoin and abate the same and to recover damages sustained on account thereof."

■ Our statutory enumerations do not modify the common-law application to nuisances. The term "private nuisance" refers to an actionable interference with a person's interest in the private use and enjoyment of his property. One must use his own property so that his neighbor's comfortable and reasonable use and enjoyment of his estate will not be unreasonably interfered with or disturbed. Bates v. Quality Ready-Mix Co., Iowa, 154 N.W.2d 852, 857, and citations.

Prior to erection of the fence plaintiffs' children and others played north of the garage and parked bicycles under the eaves. The fence being approximately two feet from the north edge of the garage restricts the play area there and an ordinary bicycle cannot be taken between the garage and fence. Plaintiffs argue also the fence with sharp points at the top render children's play near it dangerous.

■ We have held supra plaintiffs' only easement on defendants' lot is to enter for the purpose of painting and maintaining the eaves. A gate furnishes access to de-

fendants' lot. The fence is such as commonly used and a standard in the industry. We agree with the trial court's conclusion that the fence does not constitute a nuisance.

IV. Plaintiffs' last assigned proposition is the trial court erred in taxing court costs against them. Code section 625.1 provides: "Costs shall be recovered by the successful against the losing party."

The rule is well established that in an equity action the trial court has a large discretion in the matter of taxing costs and we will not ordinarily interfere therewith. Johnson v. Ruth, 144 Iowa 693, 696, 123 N.W. 326; McGarry v. Mathis, 226 Iowa 37, 46, 282 N.W. 786, 790; Livingston v. Davis, 243 Iowa 21, 34, 50 N.W.2d 592, 600, 27 A.L.R.2d 1237, 1249.

Here plaintiffs did not recover on the various claims alleged in their petition. The trial court only established the easement which defendants offered before suit and that tendered in defendants' answer. We find no error in the trial court's order taxing the costs against plaintiffs.

The judgment and decree of the trial court is affirmed.

Affirmed.

All Justices concur.