# IN THE COURT OF APPEALS OF IOWA

No. 17-0282
Filed October 11, 2017

**JEFFREY J. MCALLISTER,**
        Plaintiff-Appellee,

**vs.**

**NICOLE R. POLLARD,**
        Defendant-Appellant.

_____

Appeal from the Iowa District Court for Dubuque County, Michael J. Shubatt, Judge.

Nicole Pollard appeals the district court's modification of a decree establishing custody and visitation for her eight-year-old daughter and dismissal of her application for contempt. **CONTEMPT APPEAL DISMISSED; MODIFICATION APPEAL AFFIRMED.**

Nicole R. Pollard, Dubuque, self-represented appellant.

Bradley T. Boffeli of Boffeli & Spannagel, P.C., Dubuque, for appellee.

Considered by Danilson, C.J., and Tabor and McDonald, JJ.

**TABOR, Judge.**

Nicole Pollard and Jeff McAllister are the parents of C.E.M., who is now eight years old. After Nicole's arrest on drug-related charges, Jeff sought to modify a custody decree to obtain sole legal custody of C.E.M. Nicole filed an application for contempt, alleging Jeff denied her visitation on several occasions. The district court dismissed Nicole's application and granted Jeff's modification request. Nicole appeals the district court's rulings. We are without jurisdiction to consider the district court's dismissal of her contempt application because the notice of appeal is not timely as to that ruling. And because Jeff met his substantial burden regarding modification, we affirm the district court's order modifying the custody decree.

## I. Facts and Prior Proceedings

Nicole and Jeff entered into a relationship in 2007. They had one child together, C.E.M., who was born in September 2009. The parties separated in November 2011. In the year leading up to the separation, Nicole struggled with abusing substances—both methamphetamine and alcohol. The Iowa Department of Human Services (DHS) intervened and required Nicole to leave the family home for three months. While Nicole was away, Jeff acted as the primary caretaker for C.E.M. and Nicole's son from a prior relationship.

Jeff filed a petition to establish custody in December 2011. At the time of trial on October 3, 2012, Nicole had criminal charges pending for operating while

intoxicated, third offense,[1] and she had missed several visits with C.E.M. At trial, Jeff asked the district court to award him sole legal custody. In its October 17, 2012 decree, the district court denied Jeff's request because he had not asked for sole legal custody in his petition. But the court also reasoned the facts did not warrant such an award:

> Nicole is receiving counseling for her substance abuse issues and appears to be trying to get her life back on track . . . . The [c]ourt believes fundamentally that Nicole can be a suitable caregiver for [C.E.M.] and that her desire to provide that care and be a part of [C.E.M.'s] life is genuine.

Citing Jeff's greater stability, as well as the poor communication between Jeff and Nicole, the court awarded physical care of C.E.M. to Jeff.

On February 19, 2016, Nicole was arrested for driving while barred, operating while intoxicated, possession of methamphetamine, and possession of marijuana. C.E.M. was in Nicole's care that day but was not with her mother at the time of arrest. Nicole testified she was stopped by the police while driving to the home of a friend who had agreed to drive C.E.M. home from the roller skating rink. Jeff found out about the arrest two days later when he picked C.E.M. up from her visit. The DHS investigated the matter and, although case workers suspected Nicole was abusing methamphetamine, they concluded C.E.M. had not been directly harmed or placed at risk of harm by Nicole's actions. A hair test indicated C.E.M. had not been exposed to illegal substances.

Nicole's arrest prompted Jeff to file an application for custody modification and an application to suspend visitation in early March 2016. The district court

---

[1] Following the sentencing hearing, Nicole was placed on probation. In 2013, Nicole violated the terms of her probation by testing positive for illegal substances; she served her sentence in a halfway house.

held a hearing on Jeff's application to suspend visitation on April 1. In its ruling denying Jeff's request, the court considered the DHS investigation and observed Nicole "has obtained an evaluation and is participating in counseling. She is being screened by [the Department of Correctional Services] for alcohol and drug use and her tests have thus far come back negative." The court concluded: "This ruling is not intended to have precedential effect at trial, when [Jeff] will have an opportunity to present his full case on the merits."

On July 11, 2016, Nicole filed a motion asking the court to find Jeff in contempt of the October 2012 decree, alleging Jeff withheld visitation on multiple dates between January 2016 and July 2016.[2] Jeff denied interfering with Nicole's visitation. Instead, he contended Nicole had failed to exercise visitation and failed to follow the decree and he "had a reasonable belief that [Nicole] was under the influence of a controlled substance and therefore a danger to the safety and welfare of the minor child."

At the time of trial on January 4, 2017, Nicole's charges from the February arrest were still pending. The record showed she had performed poorly on pretrial supervision in the months after the visitation-suspension hearing. After failing to attend several appointments with her probation officer and twice testing positive for methamphetamine, Nicole was arrested for violating her pretrial-services requirements in November 2016.

At the outset of the hearing, the district court announced that the trial concerned two separate actions and it would first hear evidence regarding

---

[2] In a supplemental filing, Nicole added more dates to the list, which extended to November 30, 2016.

Nicole's contempt application. Immediately following Nicole's presentation of evidence, the court denied her application, relying upon the following provision of the custody decree:

> Nicole shall complete the Children in the Middle program[3] and file proof of completion with the Court, as required by statute, within [sixty] days. If Nicole fails to do so, visitation will be at Jeff's discretion unless and until the proof of completion is filed and furnished to Jeff or his counsel.

The court reasoned that because Nicole had not filed her Children in the Middle certificate until November 1, 2016,[4] "even assuming that Jeff denied visitation on the dates set forth in the contempt filings, he had the discretion to do so."

Both parties presented additional testimony regarding modification, and in a written ruling issued on January 18, 2017, the court granted Jeff's modification request. The court awarded Jeff sole legal custody, terminated Nicole's midweek visitation, and allowed visitation to be at Jeff's discretion in the event Nicole tested positive for illegal substances or violated the terms of either her probation or any requirements put in place by the DHS.

On February 15, 2017, Nicole filed a motion to amend or enlarge findings, alleging, among other things, she had presented the Children in the Middle certificate to the court during the April 2016 hearing on Jeff's petition to suspend visitation and believed that action satisfied her filing requirement. Before receiving a ruling on the motion, Nicole filed a notice of appeal on February 17. On March 8, the district court entered an order indicating it would take no action

---

[3] The Children in the Middle program is "a court-approved course to educate and sensitize the parties to the needs of any child or party during and subsequent to" any action involving child custody or visitation. Iowa Code § 598.15(1) (2016).

[4] The completion date on the certificate was February 14, 2012.

on Nicole's motion because it was untimely and Nicole's notice of appeal had divested the district court of jurisdiction. Jeff filed a waiver of his opportunity to respond by appellee's brief.

## II.     Jurisdiction

Nicole first argues the district court erred in dismissing her application for contempt because she proved Jeff denied her visitation. We are without jurisdiction to review that argument. Jeff has not raised a jurisdictional issue, but we may consider it on our own motion. *See In re M.T.*, 714 N.W.2d 278, 281 (Iowa 2006).

The district court filed a ruling dismissing Nicole's contempt application on January 4, 2017. On Februry 15, Nicole filed an untimely motion to enlarge or amend the district court's findings on both her contempt application and Jeff's modification request. *See* Iowa R. Civ. P. 1.904(3) ("[A] rule 1.904(2) motion to reconsider, enlarge, or amend another court order, ruling, judgment, or decree will be considered timely if filed within [fifteen] days after the filing of the order, judgment or decree to which it is directed."). She did not file a notice of appeal until February 17, forty-four days after the district court's contempt ruling. *See* Iowa R. App. P. 6.101(1)(b) ("A notice of appeal must be filed within [thirty] days after the filing of the final order or judgment.").[5]

Although both the contempt application and the modification application arose out of the same underlying case, they constituted two separate final orders

---

[5] In that notice, she mentioned only the district court's modified decree, making no reference to the earlier contempt ruling. *See* Iowa R. App. P. 6.102(1)(a)(1) (requiring notice of appeal to "specify . . . the decree, judgment, order, or part thereof appealed from"). Accordingly, it is not clear she intended to appeal the contempt ruling.

on two distinct issues. *See Lyon v. Willie*, 288 N.W.2d 884, 887 (Iowa 1980) ("Two final orders are possible in a single case, one putting it beyond the power of the court to put the parties in their original positions in relation to a specific issue, and the other adjudicating remaining issues in the case."). As such, to properly appeal the contempt ruling, Nicole was required to file a notice of appeal within thirty days of that ruling (or had she filed a timely 1.904(2) motion, within thirty days of the district court's ruling on that motion). She did not do so. Accordingly, we lack jurisdiction to consider Nicole's arguments on the contempt issue. *See Hills Bank & Trust Co. v. Converse*, 772 N.W.2d 764, 771 (Iowa 2009) ("A failure to file a timely notice of appeal leaves us without subject matter jurisdiction to hear the appeal.").

### III.    Scope and Standards of Review

Our review of an order modifying custody is de novo. *See In re Marriage of Sisson*, 843 N.W.2d 866, 870 (Iowa 2014). Although we give weight to the fact-findings of the district court, particularly concerning witness credibility, we are not bound by them. *See In re Marriage of Brown*, 778 N.W.2d 47, 50 (Iowa Ct. App. 2009). "Even though we engage in a de novo review, we will not disturb the trial court's conclusions unless there has been a failure to do equity." *In re Marriage of Jacobo*, 526 N.W.2d 859, 864 (Iowa 1995). Our paramount consideration is the best interests of the child. *See In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015).

We review the court's assessment of court costs for abuse of discretion. *See Wymer v. Dagnillo*, 162 N.W.2d 514, 519 (Iowa 1968).

## IV.     Analysis

**A.     Modification of Custody**  Nicole argues the district court should not have modified the decree to grant Jeff sole legal custody of C.E.M.  As the party seeking modification of the decree, Jeff had the burden to demonstrate by a preponderance of the evidence that "conditions since the decree was entered have so materially and substantially changed" that it would be in C.E.M.'s best interests to alter the custody arrangement.  *Hoffman*, 867 N.W.2d at 32 (citation omitted).  These changes "must not have been contemplated by the court when the decree was entered," "must be more or less permanent," and "must relate to the welfare of the child[]."  *Id.* (citation omitted).  In addition, Jeff was required to demonstrate he could more effectively minister to C.E.M.'s long-term needs.  *See id.*

In its decision to modify legal custody, the district court reasoned that at the time of the original decree, it had anticipated Nicole would continue on her path of substance-abuse recovery and become a more stable parent for C.E.M., but instead, "her issues appear to be getting worse as opposed to better."  Nicole disagrees and contends there has not been a substantial change of circumstances warranting modification.[6]  She also asserts the court failed to consider C.E.M.'s best interests.

---

[6] Relying largely on her allegations in the contempt action that Jeff had withheld visitation, Nicole also argues the district court erred in not modifying the custody decree to award physical care to her.  Assuming Nicole preserved error on this issue, we conclude a change in physical care would not be appropriate here.  Not only do we disagree with Nicole's assertion that Jeff unreasonably withheld visitation, but we also find no evidence in the record Nicole was the superior caregiver.  *See Hoffman*, 867 N.W.2d at 32.

We agree with the district court that Jeff proved a material and substantial change in circumstances warranting modification. As the court noted:

> [Nicole] has continued to commit crimes that result in her being incarcerated. If she is convicted of the charges pending against her at the time of trial, she will face up to seven years of incarceration. She has not maintained a stable residence and has become even more nomadic. She has not worked or earned wages, and has paid only $120 in child support over the last four-plus years. Essentially, she has chosen to do nothing with the opportunity the [c]ourt gave her in October of 2012 to be a significant part of C.E.M.'s life—a joint custodian with normal visitation rights.

Joint legal custody requires Jeff and Nicole to agree about basic decisions related to C.E.M.'s upbringing. *See In re Marriage of Miller*, 390 N.W.2d 596, 601–02 (Iowa 1986). Although "[o]ur statutes express a preference for joint custody over other custodial arrangements," *In re Marriage of Bartlett*, 427 N.W.2d 876, 878 (Iowa Ct. App. 1988), modification to sole legal custody is appropriate "if the actions of the parties indicate that they are no longer able to cooperate," *In re Marriage of Rolek*, 555 N.W.2d 675, 677 (Iowa 1996); *see also In re Marriage of Gensley*, 777 N.W.2d 705, 715 (Iowa Ct. App. 2009) ("The overriding factor weighing against joint legal custody is the parties' utter inability to communicate with each other, which is a result of their toxic relationship.").

Due to Nicole's continuing instability since the entry of the original decree, Jeff already has been engaging in many of the decision-making tasks that come with the role of sole legal custodian. *See* Iowa Code § 598.1(5) (defining "rights and responsibilities" of "legal custody" as including decision making affecting child's legal status, medical care, education, extracurricular activities, and religious instruction). For instance, Nicole did not attend C.E.M.'s school conferences for four years, nor did she attend C.E.M.'s medical appointments.

According to Jeff, Nicole had missed between fifty and one hundred visits since the entry of the decree and often placed C.E.M. in the care of others when she did exercise visitation.

At trial, Jeff described his communication with Nicole as "almost nonexistent." Jeff acknowledged "a lot of times [Nicole] doesn't put up a fight over school and doctor, stuff like that, since she . . . doesn't show up to [C.E.M.'s] events." But when the parties needed to make joint decisions, they floundered. Jeff testified: "There is no compromise with her. Unless it's her way, there's no way at all." Nicole similarly criticized Jeff's rigidity, claiming: "Anything that would make it more difficult for me to see [C.E.M.], he's done." Nicole's actions leading up to the trial—unilaterally attempting to enroll C.E.M. in a different school and to change her health insurance—demonstrate the extent of the parties' communication breakdown. *See In re Marriage of Bloss*, No. 98-2177, 2000 WL 63192, at *4 (Iowa Ct. App. Jan. 26, 2000) ("Joint legal custody presupposes some ability to exchange information and assumes at least a minimum of respect for the other parent's role. When those qualities are not present, the concept of joint custody exists in name only."). Because of Nicole's minimal involvement in C.E.M.'s life as well as the parties' increasingly acrimonious relationship, we agree with the district court that Jeff, who has demonstrated his superior ability to minister to C.E.M.'s needs, should be awarded sole legal custody of C.E.M.

We also find the district court considered C.E.M.'s best interests by applying the guidelines of Iowa Code section 598.41(3). Jeff provides stability for C.E.M., and she is thriving in his care. Nicole's continued substance abuse and criminal activity has hindered her ability to fulfill the role of C.E.M.'s joint legal

custodian. Accordingly, we agree modification is in C.E.M.'s best interests and affirm the district court's order.[7]

### B.      Assessment of Costs

Nicole next argues the district court erred in its "award of court costs, attorney fees, and monthly child support." In its modification order, the district court did not award Jeff attorney fees and did not address the issue of child support. Accordingly, we consider only the assessment of court costs. Nicole contends it would be "more equitable to base the assessment in this case on the parties' incomes, which are not equal." While it is true that Jeff currently earns more than Nicole, as the district court noted, Nicole is capable of working and presented no evidence to explain her lack of employment. Moreover, Nicole was unsuccessful in the underlying proceedings. *See* Iowa Code § 625.1 ("Costs shall be recovered by the successful against the losing party."). We conclude the district court did not abuse its discretion in ordering Nicole, the unsuccessful party, to pay court costs. *See Wymer*, 162 N.W.2d at 519 ("The rule is well established that in an equity action the trial court has a large discretion in the matter of taxing costs and we will not ordinarily interfere therewith.").

**CONTEMPT    APPEAL    DISMISSED;    MODIFICATION    APPEAL AFFIRMED.**

---

[7] We note Nicole also generally alleges violations of various constitutional rights. We find Nicole has failed to preserve these arguments for our review and decline to address them. *See State v. Mulvany*, 600 N.W.2d 291, 293 (Iowa 1999) (noting "we require error preservation even on constitutional issues").