GUY WILLIAMS and members of Board of Supervisors, petitioners, v. HONORABLE RUSSELL JORDAN, Judge, respondent.

No. 48006.

(Reported in 52 N.W.2d 501)

April 1, 1952.

Clyde E. Herring, County Attorney, and James V. Sarcone, Assistant County Attorney, for petitioners.

Paul Hewitt, of Des Moines, for respondent.

THOMPSON, C. J.—On January 9, 1951, Wilma B. Ginsberg received a class "B" permit licensing her to sell beer at a designated location in Polk County. On June 28, 1951, she was convicted in the district court of Polk County, upon plea of guilty, of the crime of keeping intoxicating liquor where beer is sold, in violation of section 124.31 of the 1950 Code of Iowa, and was duly sentenced. On July 3, 1951, the Board of Supervisors of Polk County, having before it a certified copy of the record of the Polk County District Court showing this conviction, revoked the permit above referred to. No claim is made by the respondent that the Board in any manner acted illegally in this revocation, and under well-established rules we assume, in the absence of any showing to the contrary, that the action of this body of public officials was in all respects in accordance with law.

At the time of the issuance of the permit to Wilma B. Ginsberg she filed a bond in conformity to the provisions of section 124.9, Code of 1950, the material part of which section is herewith set out:

"Except as otherwise provided in this chapter a class 'B' permit shall be issued by the authority so empowered in this chapter to any person who:
"* * *

"3.    Furnishes a bond in the form prescribed and to be furnished by the state tax commission with good and sufficient sureties to be approved by the authorities to which application is submitted, conditioned upon the faithful observance of this chapter, in the sum of five hundred dollars. Said bond shall be further conditioned to the effect that the permittee and his surety, as a part of the permit granted hereunder, shall consent to forfeiture of the principal sum of said bond in event of cancellation of the permit as a result of charges filed and hearing had thereon as provided in this chapter."

Upon this bond the Merchants Mutual Bonding Company appeared as surety.

On July 10, 1951, the petitioners, hereinafter known as the Board, passed a resolution setting July 17, 1951, as the date for hearing on the matter of the forfeiture of the bond. Apparently the surety, hereinafter referred to as the Company, was notified of this hearing by registered mail, but no notice was served upon it by a peace officer or in any other manner except as above described.

On July 17, the date so fixed for hearing, Mr. Paul Hewitt, a practicing attorney, appeared before the Board and took a considerable part in the discussion of the question of forfeiture of the Ginsberg beer bond. We find this in the record:

"Mr. Herring: You received a copy of the resolution setting date of hearing, as attorney for the Merchants Mutual Bonding Company?

"Mr. Hewitt: I am not a representative of the company.

"Mr. Herring: Are you representing them this morning?

"Mr. Hewitt: As an attorney and not a representative of the company.

"Mr. Herring: Is it your intention to force court action on whether or not you represent the company?

"Mr. Hewitt: That is up to you boys. Whether or not you are taking action on forfeiting the bond."

At the meeting on July 17 the Board passed its resolution duly forfeiting the bond in question, as against both principal and surety. The Company thereupon appealed to Polk County District Court. After hearing, the respondent found the facts substantially as above set forth. By way of conclusion of law he determined the Board had not proceeded in accordance with section 124.40 of the Code of 1950, which he deemed the controlling statute, in that no complaint was filed before the Board and a notice of the hearing was not served by a peace officer. The judgment entry set aside the forfeiture of the bond, and for good measure also adjudged "there is no liability of the Merchants Mutual Bonding Company on this bond."

■ I. It is apparent the trial court based its ruling upon a determination that the procedure for forfeiture of the bond should have followed section 124.40, and counsel for the Company, representing respondent in this court, likewise attempts to uphold the judgment almost solely upon the same ground. A reading of section 124.40 at once demonstrates the error of this position. Section 124.40 is too long to be set out here in full. A quotation of the first sentence of the section, which follows, shows its purpose:

"In addition to all other provisions of this chapter for the revocation of class 'B' licenses, it is further provided that ten or more citizens of any precinct, or of any city or town where said city or town contains more than one precinct, wherein the business under the class 'B' license referred to in such complaint is conducted may join in filing, and it shall be the duty of every peace officer to so file with the board or council which granted the license in question, a complaint in writing, when such complainant or complainants shall have knowledge of any violations of this chapter by any license holder, setting forth the alleged acts of violation with reasonable accuracy."

Then follows the prescribed procedure.

█ It requires no discussion to demonstrate this section does not apply here. Section 124.40 is applicable where the complaint is made by citizens before trial or conviction, and certainly the permit holder should then be entitled to a hearing before his license could be revoked or his bond forfeited. It is his day in court. But in the case before us the permit holder had pleaded guilty to a violation of section 124.31, a part of chapter 124 of the Code of 1950, and her permit had been revoked by proper action. We set out here section 124.30, which governs the revocation of permits in such cases:

"If a permit holder under the provisions of this chapter, is convicted of a felony or is convicted of a sale of beer contrary to the provisions of this chapter or is convicted of bootlegging, or who is guilty of the sale or dispensing of wines or spirits in violation of the law, or who shall allow the mixing or adding of alcohol to beer or any other beverage on the premises of class 'B' permittees or who shall be guilty of the violation of this chapter as amended, or of any ordinances enacted by any city or town as provided for in this chapter, his permit shall be revoked by the authorities issuing same, and he shall not again be allowed to secure a permit for the distribution or sale of beer nor shall he be an employee of any person engaged in the manufacture, distribution or sale of beer."

Paragraph 3 of section 124.9, above set out, requires "the permittee and his surety, as a part of the permit granted hereunder, shall consent to forfeiture of the principal sum of said bond in event of cancellation of the permit * * *" and the record shows the bond did in fact contain such a condition. It was a part of the agreement under which the permit was secured, a necessary prerequisite to its issuance, and its terms were clear and known to the Company. We have said we must assume that the Ginsberg permit was legally revoked. Legality is presumed in the absence of a showing otherwise. Golf View Realty Co. v. City of Sioux City, 222 Iowa 433, 269 N.W. 451; 31 C. J. S., Evidence, section 134, pages 769, 770.

We see no reason, therefore, why the Company should not be held to its agreement. It has consented to the forfeiture of the bond upon the happening of the very event that has occurred

here—the cancellation of its principal's permit to sell beer. It was not entitled to notice of a hearing upon the matter of the forfeiture. The registered mail notice which it received was a matter of grace rather than of right. Much in point is Commonwealth v. Tillman, 322 Pa. 338, 340, 185 A. 639, 640. There the surety complained of the forfeiture of a bond given by its principal to the Pennsylvania Liquor Control Board. The Pennsylvania Supreme Court said:

"In the present case, however, the cause of the revocation of the license was the failure of the licensee to observe the liquor laws, which was the very condition of the bond. In it the obligors agree that 'upon violation * * * of any laws of this Commonwealth and the rules and regulations promulgated by the Pennsylvania Liquor Control Board relating to liquors and malt liquors and upon the revocation of the license aforesaid for any such violation during the continuance of said license the full amount of this bond shall be due and payable.' Thus by the express terms of the bond liability followed automatically upon a revocation of the license 'for any such violation.' "

■  We agree that by the express terms of the bond in the case before us liability followed automatically upon a revocation of the permit for a violation of one of the provisions of chapter 124. "It is so nominated in the bond."

II.  There is no contention by respondent that certiorari is not the proper remedy for the correction of the holding of the trial court. But he does assert that in certiorari proceedings of this nature we are bound by the facts as found below. We need not and do not determine this question. There is no substantial dispute in the facts; the only issue is as to whether the respondent drew the proper legal conclusions from them. We have indicated our holding that he did not.

III.  Petitioners contend the Company did in fact appear by its attorney at the hearing on July 17, at which the proposed forfeiture was to be determined. Mr. Hewitt was admittedly present, took some considerable part in the discussion, and said: "I am representing them [the Company] as an attorney and not as a representative." It is not clear to us how an attorney can *represent* a party to a proceeding without becoming a *representa-*

*tive,* at least to the extent of appearing for him. But since we have held no notice of hearing to the Company was required here, we find it unnecessary to determine Mr. Hewitt's exact status when he appeared before the Board.—Writ sustained, and ruling and judgment of the trial court annulled.

All JUSTICES concur.