ROBERT H. WALKER, appellee, v. THE CITY OF CLINTON et al., appellants.

No. 48299.

(Reported in 59 N.W.2d 785)

1100

JULY 17, 1953.

Alan H. Mayer and E. C. Halbach, both of Clinton, for appellants.

Holleran & Holleran and Prentice W. Shaw, all of Clinton, for appellee.

THOMPSON, J.—On September 12, 1952, plaintiff was the holder of a class "B" beer permit issued by the City of Clinton. On that date the city council, by a six to three majority, voted to revoke the permit. Thereupon the plaintiff brought his action

of certiorari challenging the legality of the action of the council and alleging that it acted arbitrarily and without jurisdiction. After hearing, the trial court sustained the writ. It found that certiorari was a proper remedy, that no notice of the proposed revocation was given to plaintiff and he was accorded no hearing, and notice and hearing were essential before the permit could be revoked. It further found that there was no competent evidence before the council upon which it was entitled to act. The attempted revocation was held illegal and void.

The errors assigned by defendants upon this appeal are, in substance, that certiorari is not a proper remedy under the circumstances existing here; that plaintiff was not entitled to notice of the proposed revocation or to a hearing; and that the trial court was in error in holding there was not sufficient competent evidence before the council to warrant the action taken.

Much time and space are devoted by counsel for the parties to the question of the propriety of the remedy—certiorari—adopted by plaintiff to test his rights. The question is not free from difficulty; but we think we need not decide it. Assuming, arguendo, that certiorari was available to plaintiff, we conclude he has failed to make a sufficient showing to sustain the writ, and that the trial court was in error in holding he had done so.

I.   The question of the right of the holder of a beer license, or permit, as our statutes designate it, to a notice and hearing before revocation divides into two parts. First we have the inquiry whether the legislature may legally give the governing bodies—city or town councils or boards of supervisors—which issue permits the right of revocation without notice (which implies, of course, also without hearing); and second, if it may grant such powers, has it done so? We take these up in order, under subheads (a) and (b).

(a). The right of a legislature to provide, without notice or hearing, for revocation of licenses, or permits, for the sale of beer is so well established that it seems hardly debatable. Constitutional questions of due process and taking of property without compensation have been repeatedly answered by the statement that a license to handle, sell or otherwise dispense beer, wines and other malt or spirituous liquors is a privilege

granted by the state and is in no sense a property right. Such a license does not constitute a contract with the state or with the municipality or other governing body which the state empowers to issue it. When the licensee takes this privilege he does so subject to the provisions of the statutes under which it is granted; and if these statutes say or fairly imply that he is entitled to no notice or hearing before revocation, he cannot be heard to complain if he is given none. We said in the recent case of State v. Dahnke, 244 Iowa 599, 603, 57 N.W.2d 553, 556:

"The right to sell beer is not an inherent or unrestrained right. It is a right or privilege granted by the state to be exercised under such restrictions as the legislature sees fit to attach thereto. When one obtains a license or permit in this state to sell beer, he does so with all legal restrictions pertaining thereto constituting a part thereof."

■ That a license such as the one involved here is not property, and the licensee takes it subject to the provisions of existing law, including the right of the proper authorities to revoke it, has been held repeatedly in Iowa and elsewhere. See Hurber v. Baugh, 43 Iowa 514, 516, 517; Columbus City v. Cutcomp, 61. Iowa 672, 673, 17 N.W. 47, 48 ("* * * the very decided weight of authority holds that licenses to sell liquors are not contracts between the state and the person licensed, giving the latter vested rights, and partaking of the nature of contracts, but are merely temporary permits to do what otherwise would be an offense, issued in the exercise of police powers, and subject to the direction of government, which may revoke them as it deems fit."); State v. Schmidtz, 65 Iowa 556, 557, 22 N.W. 673; West v. Bishop, 110 Iowa 410, 81 N.W. 696; Wallace v. Reno, 27 Nev. 71, 73 P. 528, 63 L. R. A. 337, 103 Am. St. Rep. 747; Darling Apartment Co. v. Springer, 25 Del. Ch. 420, 22 A.2d 397, 137 A. L. R. 803. Many other cases might be cited. A great number of them are discussed and analyzed in Wallace v. Reno, supra, and we shall not take the space required to set them out here.

The Iowa law leaves no doubt that the sale of beer is an illegal business in this state, unless it is carried on in conformity

to the statutes. At the threshold of chapter 124 we are met by section 124.1 which says: "It shall be unlawful for any person to \* \* \* sell beer unless a permit is first obtained as provided for in this chapter." Some analogy to the present discussion is also found in Ford Hopkins Co. v. Iowa City, 216 Iowa 1286, 248 N.W. 668, and Bernstein v. Marshalltown, 215 Iowa 1168, 248 N.W. 26, 86 A. L. R. 782. These cases are concerned with the status of one who desires to engage in the business of selling cigarettes.

It is only fair to say that the plaintiff does not seriously contend his permit was more than a privilege. But he does assert, and the trial court found, that even this privilege could not be revoked without notice to him; and, of course, if he was entitled to notice he was likewise entitled to be heard. Such is not the law. He who obtains a license to do an otherwise prohibited act, issued by the state or subdivision thereof in the exercise of its police power, takes it subject to all its infirmities; and one of these is that the power which issued it may summarily revoke it if the governing statutes so provide. This may make the state an "Indian giver"; it may be an apparent injustice to the permit holder; but if the legislature in its wisdom determines that the necessities of the public health and morals require such power in the issuing authority, it has the power to so decide, whether or not the rule be harsh or inequitable as against the tavern keeper. The Nevada Supreme Court, in Wallace v. Reno, supra, page 87 of 27 Nev., page 533 of 73 P., said:

"From a general review of the authorities it appears that a license for the sale of liquors may be revoked before the expiration of the time for which it has been granted by act of the Legislature directly, or by the will of a majority of the voters expressed at an election, or by the board or mayor in their or his discretion, and *with or without notice to the licensee,* if statutory authority and conditions be pursued. It is apparent that the respondents acted within the letter and requirements of these statutory provisions, and that they are not unconstitutional." (Italics ours.)

Likewise, the Delaware court in Darling Apartment Co. v. Springer, supra, at pages 427, 428 of 25 Del. Ch., page 401 of 22 A.2d, page 808 of 137 A. L. R., remarked:

"Any summary exercise of power may be regarded as harsh; but the question is one of legislative power, not of propriety. * * * It is a mere temporary permit issued under the authority of the State in the exercise of its police power to do that which otherwise would be unlawful. The right of the licensee can rise no higher than the terms of the law under which the license is issued; and the licensee accepts the privilege subject to such conditions, including the cause and manner of revocation or suspension as the Legislature may see fit to impose. Where the statute or ordinance provides a method of revocation or suspension, that course must necessarily be followed; but if, by express terms or by necessary implication, no notice and hearing of charges are required, and a summary power is vested in an administrative body, the licensee, by his acceptance of the license, is bound by and is subject to the condition."

That plaintiff had money invested in his stock of merchandise, fixtures, etc., does not aid him, as Justice Duckworth pointed out in Owens v. Rutherford, 200 Ga. 143, 148–151, 36 S.E.2d 309, 313, 314.

(b). The right of the legislature to authorize revocation of permits of this class without notice or hearing is clearly established by logic and by the authorities above-cited, to which might be added many more to the same effect. We think, also, the legislature has unmistakably empowered the city and town councils and boards of supervisors to make such revocation. Plaintiff contends that the council here must have been acting under section 124.40 of the Code of 1950, but we do not agree. This section provides that ten or more citizens of any city or town may join in filing, and it shall be the duty of every peace officer to file with the board or council which granted the permit in question, a written complaint, setting forth alleged acts of violation of the provisions of chapter 124 (the chapter providing for the issuance of beer permits and the regulation of the beer business generally). There follow provisions for notice and

hearing. But there is no evidence this section was used here. It appears from the record that on September 11, 1952, two minors, age 18 and 19 years respectively, were apprehended by the Clinton police with beer in their possession. On September 12 next they signed statements which said they had purchased beer at plaintiff's tavern, drinking several glasses each and taking some away with them, and described the bartender who sold it to them. Each pleaded guilty on September 12 to a violation of the beer law by purchasing beer when a minor, and was sentenced. These statements were before the council when it met on the afternoon of September 12 to consider the matter; and one of the councilmen said at that time he lived near plaintiff's tavern and had received numerous complaints about it, specifically of sale of beer to minors and sales on Sunday. The chief of police, who was present, said his department had received many complaints about the operation of this place. As to the chief's statement, the plaintiff points out that he admitted he had not been able to verify the information contained in the complaints. We shall advert to this circumstance later.

There is nothing in the record that shows the council was acting on a written complaint from citizens or from any peace officer. The source of the knowledge the council had as to the statements of the minors is not evident. Of course the statements were before it, but who produced them or called them to its attention we do not know. Perhaps it was the county attorney or the city attorney, but neither of these was a peace officer, nor was there any written complaint from anyone. The council, so far as the record shows, was acting on its own motion. The trial court found the Code section applicable was 124.34, and in this we agree. We set out the material part of this section:

"It is expressly provided, any provision of this chapter to the contrary notwithstanding, that cities and towns, including cities under special charter, and boards of supervisors, shall have the power and authority to revoke any permit issued under their authority for a violation of any of the provisions of this chapter, or any ordinance adopted by a city or town under the provisions hereof, or any rule or regulation adopted by a

board of supervisors, *or for any cause which, in the judgment of the governing body, may be inimical to or prevent the carrying out of the intent and purposes of this chapter."* (Italics ours.)

There is no provision in this section for notice to or hearing for the permit holder. Sections 124.20 and 124.30 also provide for revocations of permits under certain circumstances; and while we have said we agree with the district court that section 124.34 is applicable in the instant case, it is also true the council could have proceeded under one or both of these. Under either of these sections it had a mandatory duty to revoke plaintiff's license if there was a sufficient showing of sale of beer to a minor, either by plaintiff or any employee. But neither in 124.20, 124.30 or 124.34 is there any provision for notice or hearing. The fact that the legislature did make such requirements in section 124.40 indicates it had them in mind. By omitting them from all sections except 124.40 it clearly showed its intent they were not to be a part of 124.20, 124.30 or 124.34, or to be read into them.

There seems a sound reason for this distinction. A reading of section 124.40 seems to show the reason for its enactment— to provide a means by which citizens, or peace officers, who thought they had evidence of violations, might compel reluctant councils or boards of supervisors to act, with an opportunity for the accused permit holder to appear and meet the charges. But when the council acts on its own motion, the legislature did not see fit to make the same requirement for notice or hearing. The same distinction appeared in Darling Apartment Co. v. Springer, supra, where notice and hearing were required only when complaint was made by at least ten residents or property owners in the neighborhood. The Delaware Supreme Court held that these conditions were essential only when the statute so ordered; that is, when the matter came before the council upon such complaint.

It must be presumed, except when complaints come before it under 124.40, the legislature has left the matter of revocation to the fairness and good judgment of the governing body

concerned. Summary action was evidently thought necessary in matters involving the public welfare, and we must assume the legislature determined the need for prompt and effective action overbalanced the thought of unfairness or injustice to the permit holder. There is no requirement for notice to him except under 124.40, and the requirement in this section only emphasizes the absence of it in the other sections dealing with revocations. The plaintiff chose to engage in a business illegal per se, and legitimate only when and as permitted by the statutes. He must be held to have accepted his permit and gone into business with the knowledge that the issuing body—the city council of Clinton —might, for cause, terminate it at any time without notice to him.

Plaintiff relies considerably upon Williams v. Jordan, 243 Iowa 605, 609, 52 N.W.2d 501, 503. Although the issues were different, reliance was placed, as here, upon section 124.40. We held it did not apply, but said, when it does apply, the permit holder is entitled to notice and a hearing. That is the language of the statute; but since we have held the council did not proceed under this section in the case at bar it does not aid plaintiff.

II. Division I sets out our holding that the legislature may, if it chooses, provide for revocation of a beer permit without notice or hearing, and that it has so provided under the facts shown in this case. It remains to determine whether the council had before it a sufficient showing of "cause" for its action. The trial court found there was no competent evidence before the council from which it could legally make its determination, and this point is urged by plaintiff in support of the judgment rendered.

Section 124.20 provides for revocation of a permit when its holder, or any agent or employee, sells beer to a minor. It does not provide that the permit holder, or his agent or employee, must first be convicted of the criminal offense of such illegal sale before the permit may be canceled. Section 124.30 makes it mandatory that a permit be revoked when the holder is convicted of illegal sale of beer, or of bootlegging, or is guilty of the sale or dispensing of wines or spirits in violation

of law, or permits the mixing of alcohol with beer on his premises, or is guilty of any violation of chapter 124, or of any ordinance of a city or town provided by said chapter. It is again to be observed that revocation is required for some violations without first requiring a conviction.

Section 124.34, found by the district court to be the one applicable here—that is to say, the one under which the council proceeded—is set out above so far as material. It will be noted that it gives the council, or board, broad powers. Not only may the issuing body revoke for any violation of chapter 124, or for violation of any ordinance of a council or rule or regulation of a board of supervisors, but *"for any cause which, in the judgment of the governing body, may be inimical to or prevent the carrying out of the intent and purposes of this chapter* [chapter 124]." (Italics ours.) The "intent and purposes" of the Act were obviously to regulate and control the sale of beer. We have, therefore, the question whether the city council of Clinton acted arbitrarily and capriciously in revoking plaintiff's permit. Was it in the proper exercise of its judgment, within the meaning of the statute, in finding it had *cause* for such revocation? It might be plausibly contended that its powers, under the statute, were so extensive it might revoke for any reason or no reason. The legislature might give it such power, if it saw fit. But we think we need not go so far, and we do not. Sufficient cause appears for the revocation so it cannot be said the council acted arbitrarily, or beyond the bounds permitted by the statute.

Whether a proper "cause" for the revocation was shown turns upon the question of the evidence before the council. If we hold that it might consider only evidence that would be admissible in a court of law, we must of course say the council had nothing upon which it might act. On the other hand, if we say the strict rules of evidence do not apply to such situations, but the council might consider secondary and opinion evidence and hearsay, it had ample grounds for making the determination it did. See Carroll v. Knickerbocker Ice Co., 169 App. Div. 450, 155 N. Y. S. 1, 2, 3. It had the written statements of the two minors, and the oral, unsworn testimony of a member of the council and of the chief of police as to numerous complaints

of law violations at plaintiff's tavern. We conclude it had a right to consider these items and to base its finding upon them if in its judgment they showed sufficient cause to require a revocation.

We do not have to determine what evidence might be admissible, or properly considered, if plaintiff had been entitled to a hearing. He was not. Consequently the rules of evidence known to the law do not apply. In 42 Am. Jur., Public Administrative Law, section 129, page 461, it is said: "Obviously, rules of evidence are not applicable to such administrative determinations as are lawfully made without a hearing." On the same point we have here—the revocation of licenses—a comment in 142 A. L. R. 1388 uses almost the identical language quoted above from 42 Am. Jur. In his prize-winning article on The Extent to Which Fact-finding Boards Should Be Bound by Rules of Evidence, Mr. Albert E. Stephan says: "Rules of evidence obviously are inapplicable to such other activities as are lawfully performed without hearing." 24 American Bar Association Journal 630.

In Baltimore & O. R. Co. v. United States (the Chicago Junction case), 264 U. S. 258, 265, 44 S. Ct. 317, 319, 68 L. Ed. 667, 674, while the question was not squarely decided, there is an implication to the same effect. The court said: "Congress by using the phrase 'whenever the Commission is of opinion, after hearing,' prescribed quasi judicial action. * * * It may form this judgment only after hearing. The provision for a hearing implies both the privilege of introducing evidence and the duty of deciding in accordance with it."

The inference is readily drawn that if no hearing is required the necessary judgment may be formed informally without adhering to evidentiary rules.

It is apparent the legislature intended to give the councils or boards powers in excess of those of the courts in the revocation of licenses. As the Delaware court remarked in the Darling case, supra, at page 428 of 25 Del. Ch., page 401 of 22 A.2d, "it is well known that convictions for the violation of laws and regulations are often difficult although the public authorities may be well convinced." We return to the situation of the chief

of police, who, if we accept plaintiff's version, said his department had numerous complaints about the violations of law at plaintiff's tavern, but had been unable to prove them. It is a plausible conclusion the legislature intended to cover the gap which so often exists between the authorities being "well convinced" and the proof required to convict of a violation under the criminal statutes. Sir Henry Sumner Maine, a noted British writer and authority, in his article "The Theory of Evidence" remarks: "A policeman guiding himself by the strict rules of evidence would be chargeable with incapacity; and a general would be guilty of a military crime."

We think it inescapable that the legislature intended to give permit-issuing bodies wide discretion in revocations. They are not required to wait upon criminal convictions; they need not give notice or hold hearings; they are quite apparently not bound by technical rules of evidence. They need have before them only something which fairly shows cause which, in their judgment, indicates a continuation of the license will be inimical to the purposes of chapter 124. The nonapplication of rules of evidence is demonstrated when it is considered that since no hearing is necessary there would be no one to object to offered proof and no one to cross-examine.

We have held hearsay evidence admitted without objection may be sufficient to establish a material fact. In Reid v. Automatic Electric Washer Co., 189 Iowa 964, 976, 179 N.W. 323, 328, we said: "It is the general rule that a material fact at issue may be established by hearsay evidence, where the same is admitted without objection."

Other forms of evidence, incompetent in court trials when properly objected to, have been held to support an issue when admitted without objection. Kenosha Stove Co. v. Shedd, 82 Iowa 540, 544, 48 N.W. 933; Moore v. McKinley, 60 Iowa 367, 374, 14 N.W. 768, 772 ("Secondary evidence not objected to becomes in effect primary evidence."); Jaffray v. Thompson, 65 Iowa 323, 21 N.W. 659; White v. Smith, 54 Iowa 233, 6 N.W. 284.

It is true that often the same factors which militate against admissibility of evidence will weaken its weight when it comes

in without proper objection. Denniston & Partridge Co. v. Romp, 244 Iowa 204, 210, 56 N.W.2d 601, 604; Sinift v. Sinift, 229 Iowa 56, 71, 293 N.W. 841, 850. But we cannot say that in this case the evidence before the council, hearsay, secondary, or opinion and conclusion though it may have been when measured by court-trial standards, was not sufficient to permit the action taken. In fact, the question of evidence here turns upon much the same pivot as does plaintiff's right to a hearing. If he may not demand a hearing as of right, if the council may proceed without notice to him, as we have held, then he has no opportunity and no right to object to evidence. This means, in turn, that the council may consider anything which fairly tends to show some cause for revocation of the permit. Perhaps under our statute the council could not act arbitrarily and for no reason; there must be some reasonable ground for the action taken; but this is not to be measured by the question of evidence which conforms to the rules of court procedure.

Once the conclusions that no hearing is required and evidence need not conform to the rigid requirements of court trials are reached, we must say in this case there was sufficient cause shown. The legislative intent to sanction the method adopted by the council is clear, and it is not for us to say it would have been better to provide for notice and hearing. Likewise, the finding of the council upon the showing before it was within its discretion, which we must presume was fairly exercised, with a due regard to justice to plaintiff upon the one hand and the public health and morals upon the other.

The cause is reversed and remanded, with directions to the district court to annul the writ of certiorari and enter judgment for the defendants.—Reversed and remanded.

All JUSTICES concur.