TAMM, INC., Appellee,

v.

Sarah PILDIS et al., Appellants,

v.

David H. JOHNSTON, Third-Party
Appellee.

No. 56601.

Supreme Court of Iowa.

Dec. 15, 1976.

Gamble, Riepe, Martin, Webster & Fletcher, Des Moines, for appellants.

Crawford & Clarke, Des Moines, for appellee.

Heard by REYNOLDSON, Acting Chief Justice, and MASON, LeGRAND, UHLENHOPP and HARRIS, JJ.

MASON, Justice.

This is an appeal by defendants, Sarah Pildis, Esahr M. Pildis and Sarah Pildis and Esahr M. Pildis as trustees of the Sarah Pildis marital trust, from an adverse decree of the trial court in an equitable proceedings initiated by plaintiff to establish an easement for driveway purposes over a portion of land owned by defendants and to obtain other relief.

Plaintiff, Tamm, Inc. (hereinafter Tamm), is a contract vendee of the North Half of Lot 3, Division 3 of Grimmel's Addition to Fort Des Moines, now included in and forming a part of the City of Des Moines. The easement for driveway purposes concerns the north 10 feet of the South Half of Lot 3 owned by defendants.

Tamm also requested defendants be ordered to restore the grade on defendants' property that existed prior to March 30, 1971, and to provide and permanently maintain lateral support for Tamm's lot and the easement area. By amendment, Tamm prayed the court to order defendants to present a plan of construction to the court to be approved by the court to restore the easement area and the lateral support, and if defendants refused, then to accept Tamm's restoration plan and give Tamm a money judgment against defendants for the costs thereof. In addition, Tamm requested punitive damages.

Tamm's petition was precipitated by the construction of a parking lot on defendants' property. The excavation necessary for that project encroached upon the easement area and destroyed the lateral support necessary for Tamm's property.

Defendants answered with a general denial, counterclaimed against Tamm and commenced a third-party action against David Johnston, fee owner and contract vendor of the North Half of Lot 3. Defendants asserted (1) they owned all of the South Half of Lot 3, (2) they and their predecessors in interest had been in sole and undisputed possession of said property for more than ten years, and (3) they had made valuable improvements thereon relying on such possession and ownership. Defendants prayed title to the entire South Half of Lot 3 be confirmed in them. Tamm and Johnston denied generally the allegations of defendants.

The trial court held Tamm had failed to establish an easement by prescription or adverse possession, but concluded certain handwritten language in a 1952 real estate contract created an easement by grant for driveway purposes. The court found said language was vague as to the dimensions of the easement but the practice and usage of the parties established an easement over a triangular parcel of the South Half that is 57.6 feet in length and ten feet at the base. In addition, the court enjoined defendants from obstructing the easement area and retained jurisdiction with reference to construction of a retaining wall by defendants. Defendants' appeal followed.

Some factual background is necessary at this point.

In September 1952 L. C. Hunt and his wife Minnie F., titleholders to all of Lot 3 at that time, entered into a real estate contract with Kenneth and Janice Smith, husband and wife, conveying the South Half of Lot 3 to the Smiths. The contract contained the following handwritten language:

"Driveway is combination to be used by both parties to this contract." This contract was filed July 26, 1955.

The Smiths assigned their interest in the contract and property to Lawrence McCuen and his wife Janice in July 1955, executing and delivering to them a quit claim deed covering the South Half of Lot 3. In July 1965 the Hunts conveyed title to the McCuens by warranty deed, with the following language included therein:

"This deed is given in full and complete satisfaction of and pursuant to the terms of a real estate contract * * * [between the Hunts and the Smiths] * * * which contract was subsequently assigned to the grantees herein by * * * [the Smiths] and the covenants and warranties contained therein extend only to the date of such contract."

The McCuens conveyed title to the South Half of Lot 3 to Abe Pildis and Sarah Pildis as tenants in common by warranty deed in July 1965.

Following the sale of the South Half of Lot 3 to the Smiths in 1952, Mr. Hunt continued to operate his surgical supply business on the North Half until January 1956 when the Hunts conveyed that parcel

to David and Esther M. Johnston, husband and wife. The conveyance was by warranty deed with the following language included therein:

"To have and to Hold the premises above described, with the appurtenances, * *."

In May 1968, subsequent to the death of Mrs. Johnston, Mr. Johnston sold the North Half of Lot 3 to Tamm, Inc., on contract. The contract contained the following:

" * * * together with any easements and servient estates appurtenant thereto * * *."

The "driveway is combination" language included in the 1952 contract between the Hunts and the Smiths is found nowhere else in the chain of title of either parcel. On the other hand, the easement allegedly created thereby has never been released.

The facts set out above are not disputed. However, the remainder of the facts and circumstances are sometimes disputed and sometimes unclear.

Sometime before 1952 Mr. Hunt constructed a prefabricated steel building on the North Half of Lot 3. This building is located 7.5 feet north of the line dividing the North Half and South Half of Lot 3 and was approximately 18 feet north of a frame house which was located on the South Half until its removal in March 1971 by defendants. At or about the time of the construction of the steel building on the North Half, Mr. Hunt installed two curb-cuts as points of ingress and egress from his property to Seventh Street, which bordered Lot 3 on the west. The north curb-cut, entirely on the North Half of Lot 3, is of no concern in this litigation. However, the south curb-cut straddles the lot line between the North Half and South Half of Lot 3 extending approximately four feet on the North Half and ten feet on the South Half. It appears the south curb-cut was used for access to the area in front of Mr. Hunt's building and

to the area between his building and the house on the South Half.

The use of the south curb-cut and the area between the building on the North Half and the frame house on the South Half, from the time of conveyance of the South Half to the Smiths in 1952 to the destruction of the easement area by defendants in 1971, is disputed and unclear. It is, however, clear that at no time did one side use the other's property for parking. The alleged easement area was only used as a point of access to property on the North Half of Lot 3.

Defendants introduced considerable evidence concerning numerous obstructions placed in the area between the house and the building by them and their predecessors in interest. Tamm, however, points out that none of those obstructions interfered with the easement area.

Tamm emphasized the presence of a service door on the south side of the steel building and the importance of the easement area for access to that door. The trial court appears to have also placed a good deal of significance on the fact of the position of this door because the narrow end of the triangular easement found by the court is exactly adjacent to this service door. (The building is 19.6 feet east of the west lot line and the door is 38 feet from the front of the building. The easement extends east of the west lot line 57.6 feet.)

The parties disagree as to the composition of the surface of the area between the building and the house. Defendants rely on the testimony of Mr. McCuen that the area was grass and dirt with no gravel or ash deposited there. Tamm states the area was always gravel and dirt and relies on photos showing the area in 1955, 1965 and 1968.

These factual disputes will be dealt with as they become necessary in resolving the issues presented on appeal.

In March 1971 defendants removed the frame house located on the South Half of Lot 3. The property was then graded and excavated in preparation for the contemplated parking lot resulting in the destruction of the lateral support necessary for the easement area and the land immediately adjacent thereto. Tamm's petition in equity followed shortly thereafter.

The following issues are presented for review:

1. Did the trial court err in sustaining plaintiff's objections to the testimony of L. C. Hunt on the ground it violated the parol evidence rule?

2. Did the trial court err in sustaining plaintiff's objections to the testimony of Mr. and Mrs. McCuen on the ground it violated the hearsay rule?

3. Did the trial court err in holding the handwritten language in the 1952 real estate contract created an easement by grant?

4. If there was not an easement created by grant, did the evidence support an easement by prescriptive use or implication?

5. Should the trial court have concluded the terms and provisions of the 1952 real estate contract merged into the warranty deed of 1965, thereby destroying the easement?

"In an equity matter, such as this, our review is de novo. Rule 334, Rules of Civil Procedure. It is our responsibility to review the whole record and determine from the credible evidence rights anew on those propositions properly presented, provided issue has been raised and error, if any, preserved in the course of trial proceedings. While weight will be given to findings of the trial court, this court will not abdicate its function as triers de novo on appeal. * * * [citing authority]." *Hansen v. Chapin*, 232 N.W.2d 506, 509 (Iowa 1975).

This statement is recognized in *In re Marriage of Bare*, 203 N.W.2d 551, 554–555 (Iowa 1973):

" * * * Where, as here, the credibility of witnesses is a consideration in an equity case we give weight to the fact findings of the trial court although we are not bound by them. Rule 344(f)(7), R.C.P."

The following sketch, not drawn to scale, will serve to afford a better understanding of the physical factual situation.

[See following illustration]

STREET

SEVENTH

North Curb Cut

Sidewalk and Parking

NORTH HALF

Prefabricated Steel Building

Service Door

57.6'

7.5'

South Curb Cut

14'

10'

EASEMENT AREA

57 6'

10 2'

SOUTH HALF

House

I. Defendants offered in evidence the deposition of L. C. Hunt, whose death had preceded trial. As a part of the stipulation entered into between counsel at the time of the deposition, it was agreed "that said deposition is taken for the purpose of perpetuating testimony and for use at trial." The court admitted the deposition subject to Tamm's and Johnston's right to file written objections.

Tamm filed written objections to five questions and answers contained in the Hunt deposition wherein Hunt stated he believed the "driveway is combination" language in the 1952 contract was "null and void" after the 1965 deed of the South Half to the McCuens, and further stated "there was no easement * * * just simply permission there to park his truck."

We set out the questions and answers involved as they appear in the appendix:

"Q. Now, when that deed was given, what did you understand to be the validity or annulity at that point of the language that I referred to, the combination driveway? A. Nothing doing after that. The north half was sold to Mr. Johnston and the south half was sold to Smith, I think, and that verbally—that violated the contract of driving in.

"Q. So that that language, as far as you understood at that point, was null and void and no longer in force? A. Null and void is right.

"  *    *    *

"Q. And the easements which we have reference to was to the property that was sold on the South half? A. Well, it was—there was not easement in—that you could call an easement. It was just simply permission there to park his truck.

"Q. So actually— A. There was no easement at all. There was no drive in. There was no easement. There was no nothing, see

"Q. Along the south side of the building which was on the north half of this property? A. No, not on the south side. I told you in the front."

Tamm's objections to those portions of the Hunt deposition were based on various grounds, including the following:

"That the question and the answer is in violation of the Parol Evidence Rule, in that it is an attempt to modify the terms and conditions of a unified contract and deed given pursuant to the contract."

In its decree the trial court sustained the objections on the parol evidence ground and concluded:

"  *    *    * In substance, it was the intention of the defendants, Pildis, to show by the deposition of Hunt that at the time the easement would terminate when Hunt conveyed away his interest in the north one-half of Lot 3."

Defendants contend the trial court erred in holding that the parol evidence rule prohibited consideration of the objected to portions of Mr. Hunt's testimony. Defendants call attention to a number of cases where this court has held parol evidence is admissible, where the written instrument contains vague and ambiguous language, to show the situation of the parties at the time the instrument was executed, the subject matter, and the acts of the parties thereunder. *Shuler v. Dutton*, 75 Iowa 155, 39 N.W. 239; *Collins v. Phillips*, 91 Iowa 210, 59 N.W. 40; *Dunn v. Dunn Trust*, 219 Iowa 349, 258 N.W. 695. Defendants also point to cases where this court has held, where there is reasonable basis for fair debate and differing construction of a provision in a contract, it is proper to look to the conversations between the parties at the time the instrument was executed, which bear upon the intent of the parties thereto. *Aultman v. Meyers*, 239 Iowa 940, 33 N.W.2d 400; *Decker v. Juzwik*, 255 Iowa 358, 121 N.W.2d 652; *Ballagh v. Polk-Warren Mut. Ins. Assn.*, 257 Iowa 1334, 136 N.W.2d 496.

Defendants seek to demonstrate that the above principles apply to the instant case with the following statements:

"There can be no question but that the handwritten language in the real estate contract is vague and ambiguous. The Trial Court * * * stated: 'The language

in the contract between Hunt and Smith is vague * * * '. This finding is manifestly correct, since the language does not set forth either the location, length, or width of the area, nor does it describe the term. We submit that the testimony of Mr. Hunt was admissible to explain not only the ambiguity of the language in the real estate contract, but also to show what the parties truly intended by the language. * * *."

Tamm contends the language in question "in no sense indicates that the agreement is terminable. Therefore, the language is not ambiguous and is not open to interpretation."

■ The question at this point is whether, in light of the entire record, the challenged portion of Hunt's deposition is admissible as an aid in determining what the parties intended by the statement, "Driveway is combination to be used by both parties to this contract," or is such testimony inadmissible as an attempt to modify the terms and conditions of the easement by extrinsic evidence which would limit the duration thereof.

We believe the following principles of law are apposite.

In *Egan v. Egan*, 212 N.W.2d 461, 464–465 (Iowa 1973), this court said:

"The parol evidence rule forbids use of extrinsic evidence to vary, add to, or subtract from a written agreement. *Pappas v. Hauser*, 197 N.W.2d 607, 611 (Iowa 1972). But the rule does not come into play until by interpretation the meaning of the writing is ascertained, and, as an aid to interpretation, extrinsic evidence is admissible which sheds light on the situation of the parties, antecedent negotiations, attendant circumstances, and the objects the parties were striving to attain. *Hamilton v. Wosepka*, 261 Iowa 299, 306, 154 N.W.2d 164, 168 (1967). * * *."

■ In *Hamilton*, 261 Iowa at 311, 154 N.W.2d at 170, we pointed out the parol evidence rule applies only to prevent the substantive alteration of contractual terms agreed upon by parties and expressed in an integration of their bargain, by resort to other prior or contemporaneous agreements or understandings. In other words, it purports to exclude testimony only when it is offered for the purpose of varying or contradicting the terms of an integrated contract; it does not purport to exclude evidence offered for the purpose of interpreting and giving a meaning to those terms.

In *Pappas*, 197 N.W.2d at 611–612, the issue was the meaning of a pledge card signed by defendant, Hauser. This court was faced with the question whether a contemporaneous conversation between Hauser and the solicitor of the pledge, Mr. Bruno, could be considered in ascertaining the meaning of the pledge card. This court stated:

"When persons place their agreement in writing, the parol evidence rule forbids the use of extrinsic evidence to vary, add to, or subtract from the agreement. But when that rule is invoked by a party, two distinct steps must be taken. First, the meaning of the words that the parties used in the writing must be ascertained (interpretation), and then second, the court must apply that meaning to the writing. * * * [Citing *Hamilton*, supra]. The present case does not involve difficulty under the second step. Rather, it involves a legal problem under the first step—whether the Bruno-Hauser discussion can be considered in ascertaining the meaning of the pledge form. * * *

"In interpreting a written agreement, the principle applied in this state, stemming from the *Hamilton* case, is stated thus in *Union Trust & Savings Bank v. State Bank*, 170 N.W.2d 674, 677 (Iowa):

" '[F]or the purpose of discovering the intention of both parties to a contract extrinsic evidence is admissible which throws light on the situation of the parties, the antecedent negotiations, the attending circumstances and the objects they were thereby striving to attain.'

"We think the pledge form before us is not clear and certain in meaning. Thus use of the Bruno-Hauser conversation is also permissible."

In connection with the ascertainment of the meaning of a promise or agreement or a term thereof, Restatement, Second, Contracts, section 227 (Student Ed. Tent. Drafts Nos. 1–7, 1973), provides:

"Whose Meaning Prevails

"(1) Where the parties have attached the same meaning to a promise or agreement or a term thereof, it is interpreted in accordance with that meaning.

"(2) Where the parties have attached different meanings to a promise or agreement or a term thereof, it is interpreted in accordance with the meaning attached by one of them if at the time the agreement was made

"(a) that party did not know of any different meaning attached by the other, and the other knew the meaning attached by the first party; or

"(b) that party had no reason to know of any different meaning attached by the other, and the other had reason to know the meaning attached by the first party.

"(3) Except as stated in this section, neither party is bound by the meaning attached by the other, even though the result may be a failure of mutual assent."

In the case presently before us defendants contend the objected to portions of the deposition were offered to aid in ascertaining the meaning of the following sentence:

"Driveway is combination to be used by both parties to this contract."

However, it is our view the first two questions and answers objected to concerned termination of the driveway arrangement, a circumstance not contemplated by the plain import of the sentence in question. We believe the offer of the extrinsic evidence given in response was not an attempt to interpret the language used by the parties, but an attempt to add language thereto. Pertinent hereto are the following statements:

" * * * Actually it reveals an attempt to show not what the writing meant but rather a thought or intent entirely foreign to the written agreement, i. e., an attempt

to alter or vary its terms. * * *." *Hetherington Letter Co. v. O. F. Paulson Const. Co.*, 173 N.W.2d 575, 576 (Iowa 1970).

In *Hamilton*, 261 Iowa at 305, 154 N.W.2d at 167, this statement is found:

"It was the function of the trial court to ascertain the true intent and meaning of the parties to the contract as revealed by the language used there; ' * * * not by showing that the parties meant something other than what they said, but by showing what they meant by what they said.' *Central Heights Imp. Co. v. Memorial Parks, Inc.*, 40 Cal.App.2d 591, 608, 105 P.2d 596, 605, and citations. It is not what the parties meant to say but what they meant by what they did say. *Bankers Trust Co. v. Allen*, 257 Iowa 938, 944, 135 N.W.2d 607, 610, 611."

In light of the above, the first two questions of the objected to portion of Mr. Hunt's deposition dealing with the termination of the driveway arrangement were an attempt to show what the parties meant to say and not what they meant by what they said. Therefore, the trial court was correct in sustaining plaintiff's objections thereto on the ground the testimony called for would be in violation of the parol evidence rule.

However, the final three questions and answers objected to by plaintiff dealt with the meaning intended by the parties to be attached to the word "driveway" and the property intended to have been covered thereby. In our opinion this testimony was admissible to aid in the interpretation of the words in question. *Pappas*, 197 N.W.2d at 612. The trial court erred in sustaining plaintiff's objection thereto; therefore, this court, in its de novo review of this equity action will accord this portion of the Hunt deposition appropriate weight.

In summary then, the trial court was correct in sustaining plaintiff's objections to the two questions and answers in the Hunt deposition concerning termination of the driveway arrangement. This was an attempt to inject a foreign intent into the contractual language and thus a violation

of the parol evidence rule. However, plaintiff's objections to the final three questions and answers at issue should have been overruled since that testimony was offered to assist the court in interpreting the words used by the parties.

II. Defendants called as witnesses Lawrence and Janice McCuen, assignees of the Smiths' interest in the 1952 real estate contract. The McCuens both testified that prior to the assignment of the Smiths' interest to them in 1955 they (the McCuens) conferred with Mr. Hunt concerning the meaning and intent of the "driveway is combination" language included in the 1952 contract between the Hunts and the Smiths. The McCuens testified they were told by Mr. Hunt that when the contract was paid off the driveway arrangement would terminate.

In its conclusions of law the trial court held that the McCuens' testimony was hearsay and was of "little or no probative value." Defendants contend this was error and insist the testimony did not violate the hearsay rule.

■ Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. *Ruden v. Hansen*, 206 N.W.2d 713, 717 (Iowa 1973). A statement is an oral or written assertion or nonverbal conduct of a person, if it is intended by him as an assertion. See rule 801, Federal Rules of Evidence and rule 801, Uniform Rules of Evidence.

■ The trial court was not ruling on an objection to the testimony in question because no objection was made. The trial court was merely stating its determination of the weight to be accorded the testimony and was not declaring that the testimony could not be considered at all. On a number of occasions this court has quoted with approval the following from McCormick on Evidence, (Second Ed.), section 54, pages 125–126:

" * * * If the evidence is received without objection, it becomes part of the evidence in the case, and is usable as proof to the extent of the rational persuasive power it may have. The fact that it was inadmissible does not prevent its use as proof so far as it has probative value." See *State v. Schurman*, 205 N.W.2d 732, 735 (Iowa 1973); *State v. Johnson*, 223 N.W.2d 226, 228 (Iowa 1974); *In re Marriage of Meyers*, 228 N.W.2d 64, 65 (Iowa 1975).

■ The trial court in the present case appears to have recognized this principle and concluded that because of its hearsay character the testimony in question possessed "little or no probative value." This court must make an independent determination of the weight to be accorded the unobjected to testimony in question. Two questions arise in this connection. First, is unobjected to hearsay testimony entitled to less weight than competent evidence because of the inherent infirmities therein? If so, was the testimony in question in fact hearsay?

A number of Iowa cases make various statements concerning the weight to be given unobjected to hearsay. *E. g., Sallee v. Routson*, 247 Iowa 1220, 1223, 78 N.W.2d 516, 517 (" * * * full and natural probative effect * * *"); *Punelli v. Punelli*, 260 Iowa 549, 555, 149 N.W.2d 784, 788, *State v. Schurman*, 205 N.W.2d at 735 and *Lamp v. Lamp*, 245 Iowa 52, 59, 60 N.W.2d 844, 849 (" * * * will support an issue * * *"); *Walker v. City of Clinton*, 244 Iowa 1099, 1111, 59 N.W.2d 785, 791, *Reid v. Automatic E. W. Co.*, 189 Iowa 964, 976, 179 N.W. 323, 328, and *Sallee, supra*, 247 Iowa at 1223, 78 N.W.2d at 518 (" * * * may be sufficient to establish a material fact * * *"). However, only a very few cases hint at the different weight to be accorded hearsay testimony as compared to competent testimony. In *Walker*, 244 Iowa at 1111–1112, 59 N.W.2d at 791, is the following statement:

"It is true that often the same factors which militate against admissibility of evidence will weaken its weight when it comes in without proper objection. * * * [citing authorities]." See also *DeLong v. High-*

834

*way Commission,* 229 Iowa 700, 295 N.W. 91.

Thus it appears this court has never answered the question whether hearsay, admitted without objection, should be accorded the same weight as competent evidence or whether, because of the inherent infirmities therein, its weight is diminished. In *Jones v. Jones,* 175 N.W.2d 389, 391 (Iowa 1970), faced with this issue, the court said:

" * * * [A]ny hearsay evidence disclosed by the record will be accorded such probative effect as is deemed proper." However, this statement does not come to grips with the issue at hand.

The author of the annotation in 79 A.L. R.2d 890, section 12, page 921, says:

"There appears to be some difference of opinion as to how much weight may be accorded to hearsay testimony which has been introduced without objection. Generally, it seems that this conflict arises in regard to whether such hearsay evidence, when admitted without objection, is as strong as any other legally competent evidence, or whether it has an inherent weakness requiring that it be weighed with caution.

"Although specific holdings may vary, the weight of authority seems to support the former view."

The annotation goes on to set out five general holdings demonstrated by cases from various jurisdictions: (1) as strong as competent evidence, (2) will establish a fact or support a verdict or findings, (3) may be used for what it is worth, (4) must be used with caution, in view of inherent weakness, and (5) of little or no weight. The Iowa position is cited under the second category, page 922, with reliance on *Reid,* supra; *Walker,* supra; and *Sallee,* supra; but *DeLong,* supra, is included in the fourth category, page 929. Considering *DeLong* an aberration it appears the Iowa cases are fairly consistent.

■ Our review of the authorities cited in the foregoing annotation as well as other cases leads us to the conclusion that the proper rule to be adhered to in this state is that when hearsay evidence which would be objectionable and incompetent when properly objected to is admitted without objection and is relevant and material to an issue it is to be considered and given its natural probative effect as if it were in law competent evidence. Its weight is to be determined by the trier of fact by the same criteria as is employed in considering other competent evidence. Recognition of such a principle will, in our opinion, advance uniformity and abolish impossible line drawing.

■ In view of the above conclusion we need not decide whether the McCuens' testimony was in fact hearsay. It will be accorded the same weight as competent evidence.

However, another question is present in this division which must be considered before proceeding to the next issue.

■ The McCuens' testimony concerned conversations they had with Mr. Hunt about termination of the driveway arrangement. For the same reasons asserted in the previous division we believe this testimony violates the parol evidence rule. The testimony was not offered to assist in the interpretation of words of termination because there were none. It was clearly an attempt to *add to* contractual language words not previously there or referred to. It is true there were no objections to this testimony, but there is case law support for the proposition a court should sua sponte apply the parol evidence rule. In *Randolph v. Fireman's Fund Ins. Co.,* 255 Iowa 943, 949, 124 N.W.2d 528, 531, 8 A.L.R.3d 907, 913–914, this court said:

"Since we think the policy is clear in its intent that no farm employees are covered unless listed and a premium charged, *we have no occasion to give any effect to the parol evidence introduced.* It was conflicting; but *whether objected to or not,* under the circumstances here it has no weight. The rule against varying, modifying or contradicting written instruments by parol evidence is one of substantive law rather than of evidence, and *such evidence will be disregarded even though not objected to when*

*offered.* \* \* \* [citing authorities]." (Emphasis supplied). See also *Williams v. Williams,* 251 Iowa 260, 264, 100 N.W.2d 185, 188.

Therefore, their testimony is entitled to no consideration in arriving at our decision.

III. Defendants initially take issue with the name given to the easement found by the trial court. The trial court concluded the language in the 1952 real estate contract created an easement by grant. Defendants contend the alleged easement should be denominated an easement by reservation and then point to authorities which state an easement by grant will be more readily implied than an easement by reservation. *Farmers & Mechanics Sav. Bk. v. Campbell,* 258 Iowa 1238, 1249, 141 N.W.2d 917, 923 and Restatement, Property, section 476, Comment c.

We are not persuaded by defendants' argument. The quotation from *Farmers & Mechanics Sav. Bk.,* 258 Iowa at 1249, 141 N.W.2d at 923, set forth in defendants' written brief and argument, does not aid them here since the statement is directed to easements created by implication.

There are three ways to create or establish an easement in Iowa: (1) express written grant, (2) prescription, and (3) implication. *Wymer v. Dagnillo,* 162 N.W.2d 514, 516 (Iowa 1968). The trial court held, and defendants agree, Tamm had not established an easement by prescription or adverse possession. Hence, under the principle recognized in *Wymer,* the easement here, if one in fact exists, must have been created either by express written grant or implication. The trial court did not deal with the question whether an easement was established under this record by implication.

Defendants' final contention in this division is that since the easement-creating language is ambiguous the intent of the parties thereto, as evidenced by the testimony of Mrs. Smith, Hunt, and the McCuens, must be considered and if considered unequivocally demonstrates there was no intention to create an easement. They fur-

ther contend the parties' use of the property in question also negates any such intention.

Much of the testimony relied upon by defendants to support their contentions here is the subject of the parol evidence and hearsay discussions in divisions I and II, respectively.

Defendants rely on the testimony of Mrs. Smith, purchaser under the 1952 real estate contract, Mr. Hunt, seller under said contract, and the McCuens, assignees of the Smiths' interest in said contract and grantees in the 1965 warranty deed. Only Mrs. Smith's testimony is not the subject of previous discussions concerning parol evidence violations and hearsay exclusions. In essence, she testified the "driveway is combination" language was intended merely to permit Hunt to use the south curb-cut in such a way that vehicles could enter one curb-cut, park in front of his building and exit by way of the other curb-cut and did not mean anything "up between our building." It was not intended to create any easement along or across any portion of the South Half of Lot 3. Any sua sponte application of the parol evidence rule by this court would not affect this testimony. It was offered to aid in the interpretation of the term "driveway." Unlike the testimony of the McCuens and Mr. Hunt, Mrs. Smith's testimony did not concern an alleged termination date. It did not seek to add a foreign concept to the contractual language but only sought to assist in interpreting the words used therein.

To counter defendants' argument concerning the alleged termination of the driveway arrangement, Tamm simply points out there is nothing in the language used to indicate a termination date was considered. Consequently, any evidence introduced on this point violates the parol evidence rule and cannot be considered.

The trial court concluded the language used was not vague as to the creation of the easement but was "indefinite as to length and width." The court then looked to the parties' use of the property to determine the dimensions of the easement pursuant to

the following statement from *Wiegmann v. Baier,* 203 N.W.2d 204, 208 (Iowa 1972):

"Assuming, arguendo, ambiguity exists by the terms of the easement agreement, the manner in which the parties themselves have construed them is persuasive evidence of their intention. * * * [citing authorities]."

Defendants contend the use of the property by the parties to the 1952 real estate contract demonstrates that there was no easement over the area between the building and the house. They contend this evidence only shows the use of the curb-cuts as a "circle around" as Mr. Hunt testified.

Defendants point to Mrs. Smith's testimony as support. However, Tamm also looks to her testimony for support in establishing the easement's dimensions through the use of the property. Her testimony is confusing. However, it does establish that Hunt used the curb-cut as a point of access to the area next to the service door at the side of his building. To do so he passed over the property in dispute. It therefore appears Mrs. Smith's testimony supports Tamm's position and not defendants'.

Defendants also call attention to Mr. McCuen's testimony. However, he only states neither party encroached upon the other's property in parking their vehicles and does not state Hunt did not drive over portions of the South Half to reach the service door. His testimony would be of value to defendants only if the easement in question was for parking space on the South Half of Lot 3. That is not the case. The easement only covers land on the South Half which is traveled over to reach a parking area entirely on the North Half.

The testimony is uncontradicted that Hunt, and later Mrs. Johnston, parked at the service door. Testimony also established the south curb-cut was used as an entrance and exit to and from the property on the North Half of Lot 3.

The trial court, after considering what it thought to be the competent evidence, found that the easement covered a triangular (actually a trapezoid) parcel of land ten feet wide at the curb-cut, five feet wide at a point directly south of the service door and 57.6 feet in length. These dimensions are sufficient to allow a vehicle to enter from the curb-cut, drive to the service door and park without infringing upon the South Half. With the easement at the service door the total distance from the building to the unencumbered portion of the South Half is approximately 12 feet, which allows for the opening and closing of vehicle doors.

■ We have considered the evidence detailed by defendants in support of the contentions urged in this division in our de novo review of the whole record. In light of our determinations stated in divisions I and II it is our view, but for the doctrine of merger discussed in the next division, the credible evidence before us would warrant a finding an easement had been created by express written grant.

■ IV. As stated, the Hunts conveyed title to the South Half of Lot 3 to the McCuens by warranty deed in July 1965. There is no mention in the warranty deed of either the combination driveway or the curb-cuts. Defendants contend the deed and not the 1952 contract is controlling in determining the rights of the parties. In other words, the contract is merged into the deed and the latter is entirely controlling.

In *Phelan v. Peeters,* 260 Iowa 1359, 1362, 152 N.W.2d 601, 602–603, there is this statement:

"The broad rule is that a contract to convey land presumptively becomes merged in the subsequent deed executed in performance thereof and that the deed speaks and the contract is silent as to all matters of conflict between them. The rule has many qualifications, one of which is that collateral agreements or conditions not incorporated in the deed or inconsistent therewith will be deemed to survive for the purpose of enforcement. * * *

" 'Where a contract for the sale of land embraces stipulations other than those relating to the conveyance of the subject-matter, and imposes upon the vendor the duty of performing acts other than those re-

quired to assure to the vendee the character of title stipulated for, the contract is something more than one for the mere conveyance of the subject-matter at a designated time, hence the execution and delivery of the deed * * * is merely the performance of the provisions relative to the transfer of the title. It is one of several executory acts stipulated for, therefore its performance does not affect the vitality of the original contract as to collateral matters which the vendor has obligated himself to perform. Accordingly, where there are collateral undertakings [expressed] in such [a] contract which are not satisfied by a subsequently executed deed of the subject-matter, these undertakings survive the acceptance of the deed, unless there are provisions in the deed inconsistent with the survival of such covenants or stipulations.' * * * [citing authorities]." See also 8A Thompson on Real Property, (1963 Replacement), section 4458 and 6 Powell on Real Property, paragraph 902, ns. 23 and 24.

■ Tamm initially confuses the theory relied upon by defendants with another merger doctrine applicable to easements. Tamm contends there must be unity of title to the dominant and servient estates for the merger doctrine to apply. However, those requirements apply to the merger doctrine which concerns the situation where the dominant and servient estates become the property of one owner. In that situation, the easement is extinguished under a merger theory. That theory clearly is inapplicable in the case before us.

Tamm relies heavily on *Dawson v. McKinnon,* 226 Iowa 756, 766, 285 N.W. 258, 263, wherein the court said:

"* * * [T]he stipulation in the appellant's contract of purchase, that her grantors would grant the easement, in question, in their deed consummating the transaction, was not complied with, although both instruments were drawn on the same day. Appellant claims this was an inadvertence, and that there was no intention on the part of either party to waive the provision of the contract. The trial court sustained this contention of appellant, and decreed that

contract, in all of its provisions, was not merged in the deed, by the appellant's acceptance of it. * * *

"Ordinarily the acceptance of the deed completes the execution of the contract, and is conclusive evidence of its complete fulfillment. But this principle does not apply to a collateral and accessorial agreement of this kind. * * * [citing authorities]."

■ Tamm contends the "driveway is combination" language in the 1952 real estate contract created a collateral and accessorial agreement and therefore was not merged into the 1965 warranty deed.

Resolution of this issue is somewhat complicated by the fact that the usual fact pattern in this kind of case is where the disappointed conveyee sues to enforce a provision of the contract not incorporated in the deed. Here, however, a successor in interest of the conveyor is seeking to enforce such a provision against a successor in interest of the conveyee. Therefore, it is very difficult to draw analogies from other cases. Nevertheless, it appears to us the language in the 1952 contract is not the kind of collateral and accessorial agreement referred to in the above statements. *Dawson* is factually distinguishable in that there the contract stated the deed would contain an accurate description of the easement, *and* both documents were executed on the same day.

In our opinion, this is not the kind of collateral and accessorial agreement excepted from the operation of the merger rule. There is the additional fact plaintiff has not rebutted the presumption the contract did in fact merge into the deed.

V. Defendants contend the evidence likewise does not establish an easement by prescription or by implication. However, defendants' brief does not differentiate between these two types of easements and only argues against the existence of an easement by prescription. Even though they deny the existence of an implied easement in the argument heading to division 4 of their brief, the body of that division ignores it.

The trial court concluded Tamm had not "established as a matter of law that it has an easement by adverse possession or prescription." The trial court erroneously separated the concepts of adverse possession and prescription as they apply to the law of easements. Adverse possession of land is analogous to an easement by prescription but is not recognized generally as a separate and distinct method of creating an easement in Iowa. *Wymer v. Dagnillo,* 162 N.W.2d at 516, and authorities cited.

Tamm concedes there was no prescriptive easement, but asserts the evidence does establish an implied easement if no easement by grant is found. The implied easement theory is set forth in division 2 of Tamm's petition.

The following principles are basic to any discussion of an implied easement:

"* * * An easement by implication is one which the law imposes by inferring the parties to a transaction intended that result, although they did not express it. * * * [citing authorities]." *Schwob v. Green,* 215 N.W.2d 240, 242–243 (Iowa 1974).

"In determining whether the circumstances under which a conveyance of land is made imply an easement, the following factors are important: (a) whether the claimant is the conveyor or the conveyee, (b) the terms of the conveyance, (c) the consideration given for it, (d) whether the claim is made against a simultaneous conveyee, (e) the extent of necessity of the easement to the claimant, (f) whether reciprocal benefits result to the conveyor and the conveyee, (g) the manner in which the land was used prior to its conveyance, and (h) the extent to which the manner of prior use was or might have been known to the parties." Restatement, Property, section 476, cited with approval in *Schwob, supra,* at 243.

In *Wymer v. Dagnillo,* 162 N.W.2d at 517, it is said:

"Such an easement by implication arises only where the use antedates the separation of title. That is where the owner of an entire tract uses it so a part derives from the other a benefit or advantage of a continuous, permanent and apparent nature, and sells the part in favor of which such benefit or advantage exists, an easement, being necessary to the reasonable enjoyment of the property granted, will pass to the grantee by implication. * * * [citing authorities].

"An easement by implication upon severance of the unity of ownership in an estate arises when these factors appear: 1, a separation of the title; 2, a showing that, before the separation took place, the use giving rise to the easement was so long continued and obvious that it was manifest it was intended to be permanent; and 3, it must appear that the easement is continuous rather than temporary, and that it is essential to the beneficial enjoyment of the land granted or retained. * * * [citing authorities]." See also *Loughman v. Couchman,* 242 Iowa 885, 888, 47 N.W.2d 152, 154.

*Farmers & Mechanics Sav. Bk. v. Campbell,* 258 Iowa at 1249, 141 N.W.2d at 923, has this statement:

"* * * It is apparent the easement here, if one in fact exists, arises through implied grant rather than by implied reservation, a distinction always to be observed in ascertaining the existence of an easement. A grant of an easement will be more readily implied than a reservation thereof. Restatement, Property, section 476, Comment c."

In *Starrett v. Baudler,* 181 Iowa 965, 977, 165 N.W. 216, 219, this court made the following pronouncement:

"* * * The rule is well established that an easement in land conveyed is never to be implied in favor of that retained by the grantor, unless the burden thereof is apparent, continuous and necessary." See also *Bray v. Hardy,* 248 Iowa 794, 797, 82 N.W.2d 671, 673.

In the present connection there are a number of factors which are important in determining whether an easement by implication was reserved by Hunt at the time of his conveyance of the South Half of Lot 3 to the Smiths. They have been set out

earlier in this division. Among the recognized factors is that of necessity which is not to be confused with the claim of easement by necessity as made clear in *Schwob v. Green*, 215 N.W.2d at 244. As bearing on necessity as a factor the credible evidence, as stated, discloses Hunt constructed the steel building with the service door at a time when he owned both the North and South Half of Lot 3. To reach the service door and to have access thereto it was necessary to drive into the area in question. All parties concerned had actual knowledge of the use of this area. The easement area was apparent, continuous and reasonably necessary.

In our judgment the foregoing evidence leads to the conclusion Tamm has succeeded in sustaining its heavy burden by showing the parties intended an easement by implication to exist over the area described in the trial court's decree.

Except as modified herein, the decree of the trial court is in all respects

Affirmed.